**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 91-2733
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

YOLANDA C. LARA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
_____
(October 14, 1992)

Before KING, WILLIAMS, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Sentenced on a guilty plea for immigration-related violations, Yolanda C. Lara appeals her sentence. Concluding that the district court erred in applying the sentencing guidelines in one particular, we vacate and remand for resentencing.


I. Factual Background.

Following an investigation triggered by an anonymous tip, the Immigration and Naturalization Service (INS) arrested and charged Lara and her codefendant, Andres Ramos-Flores, with transporting and harboring undocumented aliens. The typical scenario provided

for Lara and Ramos-Flores to transport aliens from Brownsville to Houston, where they were hidden and detained while they contacted relatives living in the United States who were to wire their "fees" via Western Union to Lara and Ramos-Flores. These fees were usually $400 per person.

The investigation included a surveillance of an apartment in Houston where the aliens were housed. The surveillance team observed Lara, Ramos-Flores, and three Hispanic females leave the apartment and enter a vehicle registered to Lara. The INS agents followed and then stopped the vehicle. The Hispanic females were all undocumented; each stated that she had paid Lara and Ramos-Flores $400 to smuggle her into the United States.

Lara admitted to transporting undocumented aliens from Brownsville to Houston and to hiding them in her Houston apartment. When a consent search was conducted of that apartment, the INS agents found one female and three female undocumented aliens, a .357 revolver and ammunition, and Western Union money transfer forms. Lara directed the agents to a house on Johnson Street, where more undocumented aliens were found. One of the aliens told the agents that she and twelve others had been transported to Houston by Lara and Ramos-Flores and that each had paid her $400 fee.

Lara pled guilty to a six-count indictment: Three counts charged her with illegally concealing, harboring, or shielding from detection transported aliens in the United States, and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(C) and 18 U.S.C.

2

§ 2; three counts charged her with illegally transporting aliens and aiding and abetting, in violation of 8 U.S.C. § 1324(a)(1)(B) and 18 U.S.C. § 2. The government filed a notice of intention to seek an enhancement of the sentence under 18 U.S.C. § 3147.[1] The district court ordered a presentence investigation report (PSI). At the sentencing hearing, the court solicited objections to the PSI's factual findings. The government presented none. Lara requested the court to consider the credibility of one declarant in assessing her statements; the court agreed to do so.

The district court then entertained objections to the PSI's application of the sentencing guidelines. The government objected to the recommendation that Lara's sentence not be enhanced. The district court adopted the PSI's recommendation and refused to enhance.

Lara objected to a number of factors cited as possible grounds for an upward departure, including the large number (approximately forty) of undocumented aliens involved; the extortive aspect of the smuggling operation; the discharge of a firearm in the commission of the offense; psychological harm to one of the undocumented aliens; and enhancement by analogy to U.S.S.G. § 2J1.7. This last suggestion was based upon the scenario that the Brownsville offense was committed while Lara was on release for the instant charges and in the sentencing on that offense, the government had failed to seek enhancement under section 3147. The PSI suggested the

---

[1] While on pretrial release, Lara was arrested on a second charge of transporting undocumented aliens (the "Brownsville conviction"). She pled guilty to the charge and was sentenced to a 131-day term of incarceration.

propriety of enhancement for the first offense by an upward departure in such an instance. In addition, Lara objected to the lack of recommendation in the PSI for a two-point reduction in her offense level for acceptance of responsibility, as well as to the increase in her criminal history category by virtue of the Brownsville conviction.

After hearing these objections, the district court accepted the calculations set forth in the PSI establishing an offense level of 9 and a criminal history category of II, based upon a criminal history score of 2, yielding a guidelines range of 6-12 months. The court rejected Lara's request for a two-point reduction of the offense level for acceptance of responsibility.

The district court then employed U.S.S.G. § 2B3.2 by analogy to support an upward departure for the extortionate element of Lara's offense and used section 2B3.2(b)(3)(A)(iii), also by analogy, to support a departure for the firearm-related element. The court also applied section 2J1.7 by analogy, despite having earlier rejected the government's motion for an enhancement under section 3147, to increase the offense level an additional three points. The above departures raised the base offense level to 26, which combined with the criminal history category of II to yield a new range of 70-87 months.

Based upon that range, the court sentenced Lara to a term of incarceration of 60 months on counts 1 through 6, with the first 27 months imposed for counts 2 through 6 to run consecutively with the 60-month term for count 1. The term of incarceration on all six

4

counts totaled 87 months.

## II. Analysis.

Our review of Lara's challenge is controlled by <u>Williams v. United States</u>, 112 S. Ct. 1112 (1992). We must remand on a showing that the district court relied upon an invalid factor at sentencing, absent our finding that the error was harmless, <u>i.e.</u>, that the error did not affect the court's selection of the sentence imposed, and that the sentence was reasonable. <u>Id.</u> at 1120-21. In conducting our inquiry, we must accept the factual findings of the district court unless clearly erroneous, but we review <u>de novo</u> the application of the guidelines for errors of law. 18 U.S.C. § 3742(e); <u>United States v. Mejia-Orosco,</u> 867 F.2d 216 (5th Cir.), <u>cert. denied</u>, 492 U.S. 924 (1989).

## III. Departure by Analogy to Section 2B3.2.

A sentencing court has the power, under 18 U.S.C. § 3553(b), to impose a sentence outside the range established by a proper application of the guidelines, provided it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." U.S.S.G. § 5K2.0 (<u>citing</u> 18 U.S.C. § 3553(b) (Supp. 1992)). Our determination on appeal follows a two-pronged inquiry:

> First, was the sentence imposed either in violation of
> law or as a result of an incorrect application of the

5

Guidelines?  If so, a remand is required under § 3742(f)(1).  If the court concludes that the departure is not the result of an error in interpreting the Guidelines, it should proceed to the second step: is the resulting sentence an unreasonably high or low departure from the relevant guideline range?  If so, a remand is required under § 3742(f)(2).[2]

Williams, 112 S. Ct. at 1120.  We review findings of fact that underlie the court's sentence under a clearly erroneous standard. 18 U.S.C. § 3742(e) (Supp. 1992); Mejia-Orosco, 867 F.2d at 221.

Applying the first prong of the inquiry, we find that the departure based upon the extortive aspects of Lara's conduct was imposed neither in violation of law nor as the result of an incorrect application of the guidelines, which direct sentencing courts to

treat each guideline as carving out a `heartland,' a set

---

[2] 18 U.S.C. § 3742(f) (Supp. 1992) provides as follows:

If the court of appeals determines that the sentence ))

(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(2) is outside the applicable guideline range and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable, it shall state specific reasons for its conclusions and ))

(A) if it determines that the sentence is too high and the appeal has been filed under subsection (a), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(B) if it determines that the sentence is too low and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(3) is not described in paragraph (1) or (2), it shall affirm the sentence.

of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure may be warranted.

U.S.S.G. ch. I, pt. A(4)(b), at 1.5-1.6 (policy statement).  We find that the district court's decision to depart upward in this case was amply supported by the record.

The "heartland" of the typical section 2L1.1 offense, the offense to which Lara pled guilty, includes the profit-making element of Lara's scheme.  Beyond this, however, section 2L1.1 appears to have accounted for no other aggravating conduct in cases involving the smuggling, transporting, or harboring of an illegal alien.  Specifically, we are told, "[t]he Commission has not considered offenses involving  . . . dangerous or inhumane treatment.  An upward departure should be considered in those circumstances."  U.S.S.G. § 2L1.1, comment., application note 8.

In sentencing Lara, the district court adopted the findings of the PSI and announced its intention to depart upward under section 5K2.0.  The court cited as its reasons the large number of aliens involved and the extortive and inhumane aspects of the instant offense, both of which grounds the above commentary recognizes as deserving of departure, and additional factors, including the use of a firearm and the commission of another immigration offense while on bond.

Moreover, a sentencing court may rely upon relevant information contained in the PSI in fashioning its upward departure.  United States v. Murillo, 902 F.2d 1169, 1172 (5th Cir. 1990).

7

Having expressly adopted the factual findings of the PSI (subject only to Lara's objection to one paragraph contained therein), the district court was entitled to rely upon the facts as it found them in imposing sentence.  See United States v. Ramirez, 963 F.2d 693, 707 (5th Cir. 1992) (district court may choose to believe PSI's construction of evidence in resolving factual issues); United States v. Thomas, 870 F.2d 174, 176 (5th Cir. 1989) (same).

The PSI reveals a wealth of support for the district court's judgment that the base offense level and adjustments afforded by section 2L1.1 did not adequately reflect the seriousness of Lara's offense.  INS officials conducted interviews with Lara, her co-defendant Ramos-Flores, local residents, and a number of the aliens smuggled in by the two defendants.  According to information obtained from the interviews and recited in the PSI, Lara and Ramos-Flores at one point threatened a smuggled alien, one Magda Leticia Alvarado-Amaya, with a .357 revolver, insisting that she either pay the $400 fee or suffer forcible repatriation.  Fearing for her safety, Alvarado-Amaya shortly thereafter sought refuge at the home of a United States citizen, Patricia Mendoza, with whom a number of the aliens stayed.

Mendoza confirmed Alvarado-Amaya's story and related another incident, involving a fifteen-year-old El Salvardoan girl smuggled in by Lara and Ramos-Flores.  The girl, Rosa Candida Alvarenga, was forced by Lara and Ramos-Flores to dress up like a prostitute and "work the bars" in town until she could pay off her fee.  When Alvarenga informed Lara that she would prefer to work at more

8

honest labor, Lara reportedly became infuriated, and Ramos-Flores threatened to cut her hands off and take her back to Mexico, once again brandishing the revolver for persuasive effect.

Daunted but indomitable, Alvarenga fled the apartment in which she had been held for the shelter of Patricia Mendoza's house. Lara and Ramos-Flores later tracked her to Mendoza's house and tried to threaten her into leaving with them. At one point, Ramos-Flores discharged his revolver into the air and tried to kick the door in but left when alerted that the police had been called.

We conclude that the district court did not clearly err in adopting the factual findings of the PSI. Neither are we impressed with Lara's contention that the conduct outlined above was accounted for by the Sentencing Commission when promulgating section 2L1.1, which no more accounts for the extortive nature of Lara's particular immigration offense than it does the use of a weapon in the "typical" immigration violation. See U.S.S.G. § 5K2.0, comment., at 5.43.

Lara's conduct undeniably fell outside the "heartland" described by section 2L1.1. The record before us, at least as regards the extortive ground for departure, plainly evinces aggravating circumstances of the kind described in section 3553(b). Hence, the district court did not err in departing upward based upon the extortive elements of Lara's offense.

### IV. Reasonableness of the Departure.

We nevertheless must ascertain, as the second prong of the Williams test requires, whether the extent of the departure imposed by the district court was warranted.  In engaging in such a review, we are reluctant to tread with too heavy a step upon the district court's discretion.[3]  A departure such as the instant one, under section 5K2.0, is essentially an unguided one.[4]  The district court, however, determined that it could look to section 2B3.2 ("Extortion by Force or Threat of Injury or Serious Damage") for an analogy to Lara's egregious offense conduct.[5]

In oral argument, counsel for Lara contended that, at over seven times the maximum initial guideline range, the sentence ultimately imposed was unreasonable in the extent of its departure from the guideline norm.  We note, at the outset, that "the mere fact that a departure sentence exceeds by several times the maximum

_____

[3] See United States v. Diaz-Villafane, 874 F.2d 43, 49-50 (1st Cir.), cert. denied, 493 U.S. 862 (1989) (Reasonableness of length of departure is "quintessentially a judgment call.  District courts are in the front lines, sentencing flesh-and-blood defendants.  The dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record.  Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior 'feel' for the case.  We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure.").

[4] See United States v. Lambert, 963 F.2d 711, 718 n.3 (5th Cir.), vacated for reh'g en banc, 1992 U.S. App. LEXIS 16194 (July 14, 1992).  A "guided" departure is one for which the Guidelines provide explicit direction as to the extent of adjustment to be imposed, such as that under § 2G1.1, comment., application note 1 (8-level downward departure if offense lacked profit motive or physical force or coercion).  A departure pursuant to § 5K2.0, in contrast, is "unguided" in that the guidelines specify no set number of levels by which the district court must calibrate the degree of its departure.

[5] The actual wording used by the district court in applying § 2B3.2 by analogy is important to the determination of this case, as will become apparent below.  The court stated,

    In attempting to structure an upward departure, I looked to the sentencing guideline section 2B3.2, which involved extortion by force or threat of serious criminal offense . . . .  I think the application of the sentencing guideline section 2B3.2 is most analogous to the defendant's actual conduct.

10

recommended under the Guidelines is of no independent consequence in determining whether the sentence is reasonable." <u>United States v. Roberson</u>, 872 F.2d 597, 606 n.7 (5th Cir.), <u>cert. denied</u>, 493 U.S. 861 (1989).[6]  Nor is a sentencing court obliged to provide reasons justifying the <u>extent</u> of its departure.  <u>Id.</u> at 607.

Even so, the district court provided clear and cogent justification for the extent of its departure.  "When departing on the basis of offense characteristics, the sentencing court should extend or extrapolate from other Guidelines levels or principles, or employ analogies to closely related circumstances or conduct addressed by the Guidelines."  <u>United States v. Strickland</u>, 941 F.2d 1047 (10th Cir.), <u>cert. denied</u>, 112 S. Ct. 614 (1991).

The district court here analogized Lara's egregious conduct to the offense of extortion defined by section 2B3.2.  By departing on that basis, the court reconciled the guidelines' broad objective of uniformity and proportionality in sentencing with the statutory directive in the individual case to "impose an appropriate sentence, having due regard for the purposes" of deterrence, just punishment, and the protection of the public.  <u>See</u> 18 U.S.C. § 3553(a)(2),(b) (1988); <u>see</u> <u>also</u> <u>United States v. Gardner</u>, 905 F.2d 1432, 1438 (10th Cir.), <u>cert. denied</u>, 111 S. Ct. 202 (1990);

---

[6] In <u>Roberson</u>, we upheld a sentence more than three times the guideline maximum.  Departures of even greater multiples have been upheld as well.  <u>See, e.g.</u>, <u>United States v. Geiger</u>, 891 F.2d 512 (5th Cir. 1989) (4½ times), <u>cert. denied</u>, 494 U.S. 1087 (1990); <u>United States v. Juarez-Ortega</u>, 866 F.2d 747 (5th Cir. 1989) (per curiam) (more than 4 times); <u>United States v. Guerrero</u>, 863 F.2d 245 (2d Cir. 1988) (more than 5 times).  We also note the multiple and independent grounds for departure cited by the district court, as not all the enhancement of Lara's sentence is attributable to the § 2B3.2 departure.

<u>United States v. Ferra</u>, 900 F.2d 1057, 1062-63 (7th Cir. 1990).[7]
We thus cannot say the district court's imposition of a nine-point
departure for the extortive aspects of Lara's conduct in this case
was unreasonable.

### V. Discharge of a Firearm.

Secondly, Lara objects to the imposition, by analogy to
section 2B3.2(b)(2)(A), of a five-level increase in her offense
level for the discharge of a firearm.  The propriety of such a
departure is beyond peradventure, as section 5K2.0 expressly
provides that "if a weapon is a relevant factor to sentencing for
an immigration violation, the court may depart for this reason."
Nor is the extent of the departure unreasonable.  Section 5K2.6
notes that "[t]he discharge of a firearm might warrant a substan-
tial sentence increase."  We can find no fault with the district
court's application of the guidelines in this instance.

Lara argues, instead, that there is no evidence in the record
that Lara, as opposed to her co-defendant, ever used the gun.
Moreover, she claims, she was present on only one occasion when the
firearm was brandished and not at the time it was discharged.  The

---

[7] We acknowledge that "[i]t would throw the structure of the guidelines out
of kilter to say that a defendant may receive more time on a `departure' than he
could have received had he been convicted of the crimes leading the judge to
depart."  <u>Ferra</u>, 900 F.2d at 1063.  <u>See</u> <u>also</u> <u>United States v. Kim</u>, 896 F.2d 678,
684-85 (2d Cir. 1990).  <u>But cf.</u> <u>Diaz-Villafane</u>, 874 F.2d at 51-52 (rejecting any
such strictures on district court's discretion to depart).  We do not, however,
believe that such a characterization properly describes the actions of the court
in the instant case.  Here, the court raised Lara's base offense level of 9 under
§ 2L1.1 by 9 points, by analogy to § 2B3.2's base offense level of 18.  We note,
however, that had Lara been separately convicted under § 2B3.2 for conduct
sufficiently unrelated to her immigration offense to avoid the grouping of counts
under § 3D1.1-5, her total offense level would have been computed at 27, not 18.

12

short answer to Lara is that the PSI, the pertinent parts to which Lara failed to object, reveals that Lara in fact was present on both occasions.

It is true that her co-defendant, Ramos-Flores, apparently was the only one actually to use the gun in the commission of the offense. But Lara was more than merely present when Ramos-Flores brandished and discharged the gun; she was, in fact, the registered owner of the firearm. When arrested, moreover, she led the police directly to its hiding place under her bed. We cannot accept her contention that the guidelines "personalize" an individual's conduct to such an extent that the district court may not consider the relevant conduct of a co-defendant plainly authorized by his accomplice.[8] The district court did not clearly err in relying upon the PSI's factual findings to depart on the basis of the discharge of the revolver.

### VI. Departure for Large Number of Aliens.

Lara additionally objects to the departure based upon the large number of aliens involved.[9] The six aliens discovered at the

---

[8] For this reason, we need not address whether Lara's involvement with the firearm rose to the level of "constructive possession." See United States v. Mueller, 902 F.2d 336 (5th Cir. 1990). Rather, we rest our conclusion on the fact that each of Lara's counts of conviction included an aiding and abetting component. As an aider and abettor of Ramos-Flores's actions in furtherance of the commission of the offense, Lara is punishable as a principal. 18 U.S.C. § 2. See also United States v. Barragan, 1992 U.S. App. LEXIS 9492 (9th Cir. Apr. 22, 1992) (unpublished) (attributing relevant offense conduct of one defendant to co-defendant under aider and abettor theory).

[9] Although the district court merely cited the large number of aliens involved as one possible ground justifying departure, and there is no showing that it was a determinative factor in the sentencing, we must nonetheless reach the issue under Williams as, absent a subsequent showing of harmless error, remand is required when a sentencing court relies upon an invalid factor in departing. See Williams, 112 S. Ct. at 1120-21.

13

time of her arrest, she claims, are not "a large number." Lara overlooks, however, the district court's finding, set out in the PSI, that Lara and Ramos-Flores together had transported at least forty aliens from November 1989 to March 7, 1990. Lara did not object to this finding. Indeed, her sworn admissions may have been sufficient, standing alone, to lead the district court to conclude that hers was an expansive smuggling operation.

Section 2L1.1, application note 8, plainly states that "[t]he Commission has not considered offenses involving large numbers of aliens . . . . An upward departure should be considered in those circumstances." See also United States v. Velasquez-Mercado, 872 F.2d 632 (5th Cir.), cert. denied, 493 U.S. 866 (1989); United States v. Salazar-Villarreal, 872 F.2d 121 (5th Cir. 1989) (approving upward departures premised in part on the number of aliens transported). Circuit precedent is even plainer. In United States v. Lopez-Escobar, 884 F.2d 170, 173 (5th Cir. 1989), we upheld a departure 2½ times greater than the guideline maximum based solely on the fact that the defendant's crime "involved thirty-five aliens, an unusually large number of persons." Id. at 171 (emphasis added). Accord United States v. Hernandez, 943 F.2d 1, 3 (5th Cir. 1991) (twenty-one aliens a large number). Lara's contention on this point is without merit.


### VII. Psychological Harm to a Victim.

The district court accepted the PSI's recommendation for upward departure under section 5K2.3 ("Extreme Psychological

14

Injury") for the psychological harm inflicted on Alvarenga. That section's policy statement authorizes an upward departure where "a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense . . . ." At the outset, application of section 5K2.3 to the instant offense would appear to be barred by the statement in application note 2 to section 3D1.2 that, in the case of an immigration offense, there is no identifiable victim. The district court skirted this problem by applying section 5K2.3 by analogy to the section 2B3.2 extortion offense. There was, of course, no specified offense of conviction under section 2B3.2.

We decline to decide, however, whether the district court's methodology in this instance was permissible,[10] for we conclude that the factual findings of harm made by the district court did not rise to the level of that "substantial impairment of the intellectual, psychological, emotional, or behavioral functioning" intended by section 5K2.3 and required by caselaw to support a departure on that basis.[11] The PSI's findings, adopted by the district court,

---

[10] We limit our discussion of this issue merely to pointing out that we rejected a similar argument (albeit applied to very different facts) as to the analogous departure provision of § 5K2.8 (extreme conduct to the victim). See Roberson, 872 F.2d at 604-05.

[11] See § 5K2.3 (policy statement); United States v. Fawbush, 946 F.2d 584, 586 (8th Cir. 1991) (psychological harm must be "much more serious" than that normally resulting from crime). Compare United States v. Morin, 935 F.2d 143, 144-45 (8th Cir. 1991) (departure held to be error; record did not support finding that victim suffered greater than normal psychological harm from offense); United States v. Zamarripa, 905 F.2d 337, 340-41 (10th Cir. 1990) (same) with United States v. Newman, 965 F.2d 206, 209-210 (7th Cir. 1992) (departure upheld; psychologist testified as to great harm, and Social Security Administration found victim totally disabled); United States v. Ellis, 935 F.2d 385, 396 n.12 (1st Cir.) (departure upheld; testimony of victim's counselor supported finding of extreme harm), cert. denied, 112 S. Ct. 201 (1991); United States v. Pergola, 930 F.2d 216, 219 (2d Cir. 1991) (departure upheld; finding supported by evidence of victim's sleepless nights and constant fear of being killed).

15

stated only in conclusionary fashion that Lara's conduct "resulted in psychological harm to the alien" and that Alvarenga was placed on tranquilizers "due to a possible nervous breakdown." Even accepting the findings as not clearly erroneous, there is no evidence of the alleged substantial impairment or its duration. We find this an insufficient factual basis to support enhancement under section 5K2.3.

VIII. Departure for Violation of 18 U.S.C. § 3147.

Lara also contends that the district court erred in upwardly departing by three offense levels based upon her immigration offense committed while on bond from the instant offense of conviction. Lara was released on bond pending trial on March 8, 1990. She was arrested in Brownsville on a second charge of transporting illegal aliens on May 20, 1990, pled guilty, and received a sentence of 131 days' imprisonment. Sentencing for the Brownsville conviction occurred on September 27, 1990, well before sentence was imposed in this case on June 20, 1991.

Section 2J1.7 directs a sentencing court to add three offense levels "[i]f an enhancement under 18 U.S.C. § 3147 applies."[12] In

---

[12] 18 U.S.C. § 3147, as amended, provides,

> A person convicted of an offense committed while released under this chapter shall be sentenced, in addition to the sentence prescribed for the offense to))
>
> (1) a term of imprisonment of not more than ten years if the offense is a felony; or
>
> (2) a term of imprisonment of not more than one year if the offense is a misdemeanor.
>
> A term of imprisonment imposed under this section shall

16

this case, the district court refused the government's request for enhancement under section 3147. The district court imposed an enhancement anyway, apparently applying section 2J1.7 by analogy only.

This enhancement was erroneous. Recently, in <u>United States v. Pace</u>, 955 F.2d 270, 278-79 (5th Cir. 1992), we held that Congress and the Sentencing Commission have indicated, respectively, in sections 3147 and 2J1.7, that an enhancement for a post-conduct conviction should be applied "to the sentence for the new crime committed while on release, not the original crime for which the defendant is on release."[13]

The conclusion drawn in <u>Pace</u> accords with reason and common sense. We do not believe it was in the contemplation of Congress or the Commission to permit an enhancement when the government elects not to seek express statutory or guideline enhancement in the second conviction, as was the case with the Brownsville conviction. Such a construction avoids the anomaly, well illustrated by the facts of this case, of subjecting an offender to risk of enhancement of her sentence for the <u>first</u> offense simply because it happens to be adjudicated after the second conviction.

Lara argues, as well, that the district court improperly included the Brownsville conviction in computing her criminal history under section 4A1.1(b), thus raising her criminal history

be consecutive to any other sentence of imprisonment.

[13] The result in <u>Pace</u> accords with the determination in the instant PSI: "Our interpretation of U.S.S.G. § 2J1.7 is that it should have been applied in the Brownsville case . . . and is not applicable to the instant offense."

17

score from 0 to 2 and resulting in a criminal history category of II.  Lara argues, without citation of authority, that conduct and conviction occurring after the conduct that is the subject of the current sentence cannot be employed to increase the criminal history score.

We find this issue resolved by the plain language of the guidelines provision defining "prior sentence" for purposes of the criminal history computation:  Section 4A1.2(a)(1) provides that a prior sentence is "any sentence previously imposed upon adjudication of guilt . . ." (emphasis added).  Simply put, the Brownsville conviction was a sentence imposed upon adjudication of guilt prior to the sentence for the instant offense.  See also section 4A1.2, comment., application note 1 (including as a prior sentence one "imposed after the defendant's commencement of the instant offense, but prior to sentencing on the instant offense").[14]

IX. Denial of Adjustment for Acceptance of Responsibility.

Lastly, Lara asserts as error the district court's failure to grant her a two-point reduction in offense level for acceptance of

---

[14] We note that enhancement under § 2L1.1(b)(2) would have been inappropriate, inasmuch as it applies "only if the previous conviction occurred prior to the last overt act of the instant offense."  § 2L1.1, comment., application note 4.  The Brownsville conviction occurred after the last overt act of the instant offense.  Nothing in the guidelines, however, suggests that the unavailability of enhancement under § 2L1.1(b)(2) prevents an adjustment to the criminal history category under § 4A1.1.

Nor do we find the applicable time period for sentences to be considered in adjusting the criminal history score specified in § 4A1.2(e) relevant to the determination of this issue.  The provisions therein merely instruct courts to ignore "stale" offenses.  Here, Lara received a prior sentence for the Brownsville conviction "within fifteen years of [her] commencement" of the instant offense.  § 4A1.2(e)(1).  Thus, § 4A1.2(e) provides no obstacle to the assignment to Lara of criminal history category II.

18

responsibility. Under U.S.S.G. § 3E1.1(a), the court may reduce the offense level by two points "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his personal conduct." The trial court's determination of acceptance of responsibility is entitled to great deference on review and will not be disturbed unless it is without foundation. United States v. Villarreal, 920 F.2d 1218 (5th Cir. 1991). Here, both the district court and the PSI stated that, although Lara cooperated with the INS after her arrest, she tended to minimize her behavior and continued to deny that a firearm was involved. The district court's decision in this regard is adequately supported in the record, and we decline to disturb it.

## X. Conclusion.

The district court fundamentally erred by enhancing Lara's sentence three points for a prior conviction under section 2J1.7. Under Williams, we must remand for resentencing unless we can conclude that the error did not affect the district court's selection of the sentence to be imposed. See Williams, 112 S. Ct. at 1120-21. There has been no such showing of harmless error in this case. We therefore VACATE and REMAND for resentencing consistent herewith.[15]

---

[15] Finally, we note sua sponte that there exists a discrepancy between the oral imposition of sentence and the sentence imposed in the judgment of commitment. The transcript of the sentencing hearing states that Lara is to serve the first 24 months of her sentence on counts 2-6 consecutively to the sentence imposed for count 1; the judgment of commitment specifies 27. We anticipate that this discrepancy will be resolved by the district court on remand.

19