**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Curtis Delaskio MOORE,
Defendant–Appellant.**

No. 92–2536.

United States Court of Appeals,
Fifth Circuit.

June 30, 1993.

Rehearing Denied Aug. 11, 1993.

Tony Aninao, Houston, TX (court-appointed), for defendant-appellant.

Jeffery A. Babcock, Paula Offenhauser, Asst. U.S. Attys., Ronald G. Woods, U.S. Atty., Houston, TX, for plaintiff-appellee.

Before REAVLEY and GARWOOD, Circuit Judges, and LAKE,* District Judge.

GARWOOD, Circuit Judge:

Defendant-appellant Curtis Delaskio Moore (Moore) was convicted of assaulting a federal officer and using a firearm to commit a crime of violence. Moore appeals the sentence imposed by the district court following the reversal of his original sentence in *United States v. Moore*, 958 F.2d 646 (5th Cir. 1992). Moore claims the district court erred (1) in increasing his criminal history category one point because Moore's prior misdemeanor offense of evading arrest was similar to the conduct for which he was convicted in this case, (2) in departing from the United States Sentencing Guidelines (Guidelines) to increase Moore's offense level four points because a state law enforcement officer was injured, and (3) in vindictively imposing the sentence on remand. We affirm.

### Facts and Proceedings Below

On April 13, 1990, agents of the Drug Enforcement Agency (DEA), the Houston Police Department, and the United States Customs Service executed a search warrant on a suspected crack house in Houston. Our prior opinion sets the scene as follows. "Ten plainclothes officers, wearing jackets emblazoned with 'Houston Police Department' or 'DEA' in large reflective letters, were joined

* District Judge of the Southern District of Texas, sitting by designation.

by four uniformed officers. Street lights, mercury lights in a neighbor's yard, and a porch light all illuminated the front of the house. Additional light was provided by a floor lamp in the kitchen window and a mercury light from the street behind the house. As DEA Agent Kevin Blair and Houston Police Officer Ranaldo Ollie approached the back of the house through the driveway, they observed a man walk towards a car in the driveway, open the door, and sit down in the driver's seat. Curtis Moore, the defendant, then exited the house and approached the car to speak with the driver. Although disputed at trial, Officer Ollie testified that he shouted, 'Police!' 'Stop!' He further testified that the identifying letters on his jacket, Houston Police Department, were clearly visible. Moore turned toward Officer Ollie and began shooting. Officer Ollie was wounded in this confrontation." *Id.* at 648. Agent Blair was also fired upon by Moore, but not hit or otherwise injured. After the shooting stopped, Moore jumped over a fence at the end of the driveway in flight. Police officers again yelled, "Police!" "Stop!" Moore continued to attempt to escape by crawling from the fence to a boat parked nearby and hiding under the boat, where he was later apprehended by police.

Moore was convicted of assaulting a federal officer and using a firearm to commit a crime of violence.[1] The district court originally sentenced Moore to fifty-four months for assaulting the federal officer followed by sixty additional months for using a firearm and a three-year term of supervised release. In part, the sentence for assaulting a federal officer resulted from the district court's decision to increase Moore's offense level by four because his victim suffered serious bodily injury under U.S.S.G. § 2A2.2(b)(3). The district court assumed that Houston Police Officer Ollie qualified as a victim for purposes of section 2A2.2(b)(3).

In his first appeal, Moore challenged his conviction and sentence on several grounds. Moore's conviction was affirmed but his sentence was reversed. We said that the term "victim" as used in 18 U.S.C. § 111 and in U.S.S.G. § 2A2.2(b)(3) referred only to the victim of the charged offense and not to others injured in the same altercation. *Id.* at 651. Because Agent Blair, the statutory "victim" of the charged offense, suffered no physical injuries, the district court erred in applying section 2A2.2(b)(3) to increase Moore's offense level by four. *Id.* Resentencing was ordered for Count 1–assaulting a federal officer.

Prior to resentencing, the government moved for upward departure on the ground that the third-party injury was an aggravating circumstance justifying a departure from the Guidelines. Moore objected to this motion and to the original Presentence Report's (PSR) recommendation of a one-point criminal history category increase on the ground that his prior misdemeanor conviction of evading arrest was not similar to this offense under U.S.S.G. § 4A1.2(c).[2] This objection was important to Moore because the one-point increase shifted him from criminal history category I to category II, substantially increasing the Guidelines' recommended sentencing range.

The district court overruled Moore's objection, granted the government's motion, and imposed a fifty-four month sentence, holding that a four-level upward departure was justified by the injury to a third-party victim. This sentence was identical to the original sentence previously reversed by this Court. In imposing this sentence, the district court expressed its disagreement with our prior decision.

Moore appeals, challenging the use of the misdemeanor offense to increase his criminal history category,[3] the use of Officer Ollie's

---

1. In state court, Moore was convicted of assaulting Officer Ollie and sentenced to ten years of probation.

2. Moore was convicted of "Evading Arrest", a misdemeanor, and received a sentence of twenty-five days in the county jail. The conviction resulted from Moore's attempt to run from a police officer when in custody in 1989. He was caught after running thirty feet and tripping over a sidewalk.

3. Although the prior *Moore* opinion did not mention the misdemeanor issue, it appears to be properly before the Court and the government does not allege that Moore failed to properly preserve the asserted error.

injury to justify upward departure, and the fact that he received the identical sentence on resentencing.[4]

## Discussion

### I. Similarity of Prior Offense

■ Moore contends that because his prior conviction for evading arrest is similar to the crime of resisting arrest,[5] but dissimilar to the instant conviction of assaulting a police officer, he should not have received a one-point increase in his criminal history category shifting him from category I to category II under U.S.S.G. § 4A1.2(c).

In reviewing this claim, "we must accept the factual findings of the district court unless clearly erroneous, but we review *de novo* the application of the guidelines for errors of law." *United States v. Lara,* 975 F.2d 1120, 1123 (5th Cir.1992).

U.S.S.G. § 4A1.2(c) provides that "sentences for the following [listed] prior offenses and offenses similar to them, ... are counted only if ... (B) the prior offense was similar to an instant offense." Listed prior offenses included "[h]indering or failure to obey a police officer, ... Resisting arrest." *Id.* Thus, where a prior offense is not specifically listed under section 4A1.2(c), the offense, to be counted in the criminal history score, must be similar both to one listed in section 4A1.2(c) and to the instant offense on which the sentence is being computed.

■ In *United States v. Hardeman,* 933 F.2d 278, 281–282 (5th Cir.1991), we created a "common sense" approach to determining whether a prior offense was similar to a listed offense for purposes of section 4A1.2(c). We applied the *Hardeman* test to determine whether the prior offense was similar to the instant offense in *United States v. Schneider,* Nos. 92–3023 & 92–2386, at 15 (5th Cir. Nov. 18, 1992) [979 F.2d 1533 (Table) ] (unpublished) (disappearance of suspect yielding prior evading arrest conviction similar enough factually to three month disappearance before instant arrest for pipe bomb use not to make sentence increase plain error). This approach considers "all possible factors of similarity, including a comparison of punishments ..., the perceived seriousness of the offense as indicated by the level of punishment, the elements of the offense, the level of culpability involved, and the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." *Hardeman,* 933 F.2d at 281.

■ The word "offense", as used here, includes any relevant conduct and not just the conduct charged in the indictment. *Schneider* at 13; *United States v. Harris,* 932 F.2d 1529, 1538 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 270, 116 L.Ed.2d 223 (1991) (construing U.S.S.G. § 4A1.1(d) & (e)).

■ Applying the *Hardeman* common sense test, it is clear that Moore's prior crime of evading arrest is similar to the crime of resisting arrest listed in the Guidelines. The elements, the *mens reas,* and the degrees of culpability of the two offenses are similar.[6] Both offenses are contained in the same statutory section. The punishments for the offenses are similar.[7] The conduct

---

**4.** Moore does not appeal the sentence enhancement under U.S.S.G. § 3A1.2(a) because the victims were federal and local officials.

**5.** No evidence suggests that Moore gave any false identification or information to a police officer with regard to the instant offense that would make this offense similar to his prior misdemeanor offense of failure to identify to a police officer. That prior conviction was not counted in determining his criminal history category.

**6.** Resisting arrest involves (1) intentionally (2) preventing or obstructing (3) a person known to be a police officer or acting under the direction of an officer (4) from effecting a lawful arrest or search (5) by force. Tex.Penal Code Ann. § 38.-03(a) (Vernon 1989). Evading arrest involves (1) intentional (2) flight (3) from a person known to be a police officer (4) where the officer is attempting to lawfully arrest the offender. Tex.Penal Code Ann. § 38.04(a) (Vernon 1989).

**7.** The maximum penalty for evading arrest is six months plus a fine and the maximum penalty for resisting arrest is one year plus a fine. Although resisting arrest typically is classified as a Class A misdemeanor with a higher punishment range, the punishment for evading arrest can be increased to the same level where aggravating circumstances exist. Tex.Penal Code Ann. §§ 12.21 & 12.22 (Vernon 1989 & Supp.1993) (In 1991,

giving rise to the offenses is similar. Moore and the government agree that the crime of evading arrest is similar to the crime of resisting arrest.

■ The harder question, virtually ignored in Moore's brief, is whether the evading arrest conviction is similar to the instant offense of assaulting a federal officer. The elements, penalties, and degrees of culpability suggest that the offenses are not similar and that the instant offense is more serious.[8] The maximum penalty for evading arrest is six months, while the maximum penalty for the instant offense is ten years. The perceived degree of culpability in fleeing from a police officer is much less than that of shooting at a police officer. The instant offense involved a violent crime, while the prior offense involved no violence. Also, the evading arrest conviction occurred while Moore was a teenager.

On the other hand, both offenses involved nearly identical conduct. In the evading arrest situation, Moore attempted to flee from police custody after being arrested. In the instant offense, after police officers identified themselves to Moore, Moore fled after shooting a police officer. In both offenses, Moore possessed a gun.[9] The differences in relevant conduct are that Moore had not been arrested nor been in custody prior to his flight in the instant case. The fact that Moore was not charged with evading or resisting arrest with respect to the instant offense is not controlling here.

■ In addition, while Moore's prior evading arrest conviction may not have indicated some likelihood to commit future offenses, the fact that Moore has now attempted to evade arrest twice and that he was willing to shoot a police officer to do so indicates a likelihood of recurring criminal conduct. *See Hardeman,* 933 F.2d at 281, 283.

While the differences between the elements, punishments, and the degrees of culpability suggest that the prior offense not be counted, they do not outweigh the factual similarities that both of Moore's offenses involved flight from justice. Because Moore tried to evade arrest as part of his relevant conduct in both the prior and instant offenses, the district court could legitimately determine that the offenses were sufficiently alike to be "similar" for purposes of section 4A1.2(c) and hence did not err in including the prior offense in the computation of Moore's criminal history category.

## II. Enhancement for Third–Party Injury

■ The district court departed upward four levels stating that a third-party injury was an aggravating circumstance not adequately considered in the making of the Guidelines. Moore argues that departure was unreasonable because it was based on a third-party injury and not the offense for which he was convicted so that it cannot be considered as an aggravating factor under the relevant conduct clause of U.S.S.G. § 5K2.0 (1989). Moore also argues that the extent of the departure was unreasonable since Ollie did not suffer a serious bodily injury as defined by the Guidelines.

■ On appeal, we consider whether the departure was imposed in violation of law or constitutes a misapplication of the Guidelines. 18 U.S.C. § 3742(f); *United States v. Goodman,* 914 F.2d 696, 697 (5th Cir.1990). If there was no error in making the departure, we then consider whether the extent of the departure was unreasonable. *Lara,* 975 F.2d at 1123 (citing *Williams v. United States,* ——

the maximum fine for these two misdemeanors, but not the period of incarceration, was slightly increased.).

**8.** The maximum penalty for the federal offense is ten years plus a fine where a dangerous weapon is used. The elements are (1) forcible assault or resistance (2) of a federal officer (3) while engaged in the performance of official duties. 18 U.S.C. § 111 (1988). No proof of intent to injure or knowledge that the victim is a federal officer is needed. *Moore,* 958 F.2d at 649; *United States v. Sanchez,* 914 F.2d 1355, 1358 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991). *See supra* Note 8 (elements and penalties of evading arrest).

**9.** After this prior offense arrest, a gun was found in Moore's trunk, but the gun was not used in any way in connection with that earlier offense.

U.S. ——, ——, 112 S.Ct. 1112, 1120, 117 L.Ed.2d 341 (1992)).

■ Under U.S.S.G. § 5K2.0, a sentencing court may impose a sentence outside the range recommended by the Guidelines where it finds " 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b) (Supp.1992)); *United States v. Lara,* 975 F.2d 1120, 1123 (5th Cir.1992). In making a departure, the district court must articulate acceptable and reasonable justifications for making the departure. *See, e.g., United States v. Wade,* 931 F.2d 300, 306 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 247, 116 L.Ed.2d 202 (1991); *United States v. Webb,* 950 F.2d 226, 231 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2316, 119 L.Ed.2d 236 (1992). These reasons must be based on the policies underlying the Guidelines. *United States v. Mejia–Orosco,* 867 F.2d 216, 221 (5th Cir.1989), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). Once reasons for making a departure are given, the district court should, but generally need not, also give reasons for the extent of the departure. *Id.* at 1126; *United States v. Lee,* 989 F.2d 180 (5th Cir.1993).[10]

■ A district court may depart upward under the relevant conduct clause of the 1989 version of U.S.S.G. § 5K2.0 where third parties or property are injured if the applicable sentencing guidelines provisions do not al-ready provide for an enhancement for these types of injuries and if there is a nexus between the relevant conduct of the offense and the third-party injuries. *United States v. Ihegworo,* 959 F.2d 26, at 29–31 & n. 5 (5th Cir.1992) (a district court could depart upward under section 5K2.1 where a third-party non-"victim" was killed because the harm to the third party involved relevant conduct under section 5K2.0).[11] *See United States v. Lee,* 989 F.2d at 180 (reckless shooting at civilian vehicles during police chase not harm considered by U.S.S.G. §§ 3A1.2(b) and 3C1.2 so upward departure justified under section 5K2.0). There is no doubt that here the injury to Officer Ollie occurred as part of the relevant conduct of the charged offense.[12]

The question for us, then, is whether the Commission adequately considered harm to third parties in formulating U.S.S.G. § 2A2.2(b)(3).[13] As discussed in our prior opinion, section 2A2.2(b)(3) requires a four-level increase where the victim suffers serious bodily injury, but does not address whether injury to a third party, not a victim of the charged offense, could justify departure. *Moore,* 958 F.2d at 651.

■ We now hold that the Commission did not take into account injuries to third parties under section 2A2.2(b)(3). In *United States v. Johnson,* 931 F.2d 238, 241 (3rd Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991), the court said that section 2A2.2(b)(3)'s use of the word victim "suggests that the typical cases contemplated by the Commission were single-

10. *Lee,* 989 F.2d at 180, held that the recent en banc decision in *United States v. Lambert,* 984 F.2d 658, 663–64 (5th Cir.1993), did not require district courts to give reasons for the extent of its departure. *See United States v. Huddleston,* 929 F.2d 1030, 1031 (5th Cir.1991). Other circuits require district courts to give reasons for the extent of the departure. *United States v. Perkins,* 963 F.2d 1523, 1527–28 (D.C.Cir.1992) (relying on *United States v. Williams,* —— U.S. ——, ——, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992), where the Supreme Court re-emphasized that a district court must state specific reasons for departure and that appellate courts must examine the "district court's stated reasons for the imposition of a particular sentence"); *United States v. St. Julian,* 966 F.2d 564 (10th Cir.1992) (failure

to give reasons for extent of departure subject to harmless error standard).

11. *Ihegworo* noted that under section 5K2.0 as long as the harm giving rise to departure resulted from the relevant conduct involved in the offense of conviction and the Guidelines do not adequately consider that harm, upward departures are permitted. *Id.* at 30.

12. The bullet that injured Officer Ollie missed Agent Blair, the victim of the charged offense.

13. The district court held that the third-party injury was not sufficiently considered by the Guidelines, making it an aggravating circumstance justifying departure.

victim assaults." *See United States v. Iheg-woro*, 959 F.2d at 29–31 & n. 5 (third-party injury justified departure under 5K2.1). The fact that the section 2A2.2 Commentary is silent as to third-party injuries suggests that they were not considered by the Commission and would constitute a valid aggravating circumstance. U.S.S.G. § 5K2.0 also suggests that guideline provisions such as 2A2.2(b)(3) did not take third-party injuries into consideration. It suggests that departure may be warranted with "multi-victim" situations using the robbery guideline, which only considers single victim injuries, as an example. U.S.S.G. § 5K2.0 (1989). The word "victim" is used in the same context in the robbery guideline and in section 2A2.2(b)(3), suggesting that the Commission also did not consider multi-victim injuries in formulating 2A2.2(b)(3).[14] We hold that the Commission did not take third-party injuries into consideration in forming guideline section 2A2.2(b)(3). The district court did not err in upwardly departing on this basis.

■ The extent of the district court's departure was based on analogy to section 2A2.2(b)(3). The district court has wide discretion in determining the extent of the departure. *Lara*, 975 F.2d at 1125 & n. 3. Section 2A2.2(b)(3) recommends a four-level increase where serious bodily injury occurred. Many other Guidelines provisions recommend the same increase for serious bodily injuries. *See, e.g.,* U.S.S.G. §§ 2B3.1(b)(3); 2A2.1(b); 2B3.2(b)(4) (robbery, assault with intent to murder, extortion by force; all make victim specific recommendation). These Guidelines provisions recommend a two-level departure for mere bodily injury and a three-level increase for injuries falling between the two categories.

■ Moore argues that Officer Ollie did not incur a severe bodily injury as defined by the Guidelines. U.S.S.G. § 1B1.1 (commentary 1(j)) defines serious bodily injuries as

those "involving extreme physical pain or the impairment of a function of a bodily member, organ, ... or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." Bodily injury "means any significant injury, *e.g.,* an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." U.S.S.G. § 1B1.1 (commentary 1(b)). Officer Ollie received a gun shot wound in which the bullet went through his leg. As reported in the PSR, Officer Ollie said that the wound was extremely painful and that his leg still aches on occasion. He was treated during a two-hour emergency room visit and released. No surgery or hospitalization was required. Ollie was out of work for two weeks and on light duty for two to three months as a result of the injury. Although a lower departure may arguably have been more appropriate, the severity of Officer Ollie's injury is a fact inquiry. The district court's finding that Officer Ollie suffered a serious bodily injury justifying a four-level departure was not an abuse of discretion.

## III. Vindictive Resentencing

■ Moore argues that the penalty imposed on resentencing, by the same judge whose sentence was reversed by our prior opinion herein, resulted from judicial vindictiveness.

■■ Under *North Carolina v. Pearce*, 395 U.S. 711, 723–37, 89 S.Ct. 2072, 2080–81, 23 L.Ed.2d 656 (1969), the due process clause prohibits judicial vindictiveness on resentencing. "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due

---

14. Moore argues that there was only one victim in this case, Officer Ollie. However, two persons were injured, Officer Ollie, who suffered a gun shot wound, and Agent Blair, who feared for his life as a result of the assault. The fact that Agent Blair did not suffer any physical injuries from the assault does not mean that he was not a victim.

process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* at 725, 89 S.Ct. at 2080. "The general rule ... holds that a judge may not impose a harsher sentence upon remand if the purpose of the increase is to punish the defendant for having successfully appealed the prior conviction." *United States v. Schoenhoff,* 919 F.2d 936, 938 (5th Cir.1990). In situations where a harsher penalty is imposed by the same judge on resentencing, a defendant is entitled to a presumption that the sentence is vindictive, which may be rebutted by objective information in the district court's opinion and the record supporting the harsher sentence. *See Wasman v. United States,* 468 U.S. 559, 564, 104 S.Ct. 3217, 3221, 82 L.Ed.2d 424 (1984). However, where the penalty on remand is not harsher than the original sentence, we have stated that "there can be no claim at all of vindictiveness upon resentencing." *Id.* at 939. *See United States v. Vontsteen,* 950 F.2d 1086, 1092 (5th Cir.) (en banc), *cert. denied,* — U.S. —, 112 S.Ct. 3039, 120 L.Ed.2d 908 (1992). Moore received the exact same sentence on resentencing. Because Moore did not receive a harsher sentence on remand, he is clearly not entitled to any presumption of vindictiveness.

■■ Moore argues that even if he is not entitled to the protections of *Pearce's* presumption of vindictiveness, remarks by the judge at the resentencing hearing show

actual vindictiveness and justify remand for resentencing by a different judge. While *dicta* in several Supreme Court cases suggests that actual vindictiveness may be proven and justify relief where the second sentence is no harsher than the first,[15] we have stated that we review claims of vindictiveness based only on the district court's punishment of a defendant for exercising his right to appeal where the second sentence is harsher than the first. *Vontsteen,* 950 F.2d at 1086. In any event, neither the judge's remarks at resentencing nor anything else in the record demonstrates that the district court's resentencing was vindictive. Moore's claims in this respect are rejected.

### Conclusion

The district court did not err in its resentencing of Moore. Accordingly, Moore's sentence is

AFFIRMED.

---

15. *United States v. Goodwin,* 457 U.S. 368, 385, 102 S.Ct. 2485, 2495, 73 L.Ed.2d 74 (1982); *Wasman v. United States,* 468 U.S. 559, 566–69, 104 S.Ct. 3217, 3222–23, 82 L.Ed.2d 424 (1984); *Texas v. McCullough,* 475 U.S. 134, 138, 106 S.Ct. 976, 979, 89 L.Ed.2d 104 (1986) ("Where the prophylactic rule of *Pearce* does not apply, the defendant may still obtain relief if he can show actual vindictiveness upon resentencing."); *Alabama v. Smith,* 490 U.S. 794, 799, 109 S.Ct. 2201, 2205, 104 L.Ed.2d 865 (1989). Moore argues that the remarks of the district court evidence actual vindictiveness. The district court made the following comment:

"As you know, the Court of Appeals found fault with the sentence we imposed.... I think the Fifth Circuit findings are in conflict with the Sentencing Guidelines ... [reasons why] [but] the Appellate Court has ruled otherwise, and I

must adhere to what they say is the law.... The government has moved for upward departure on the grounds that the injury to Officer Ollie has not been sanctioned. And I do believe it is appropriate too, and I do intend to depart and impose the same sentence as previously."

Although the district judge expressed his disagreement with our decision, his remarks do not suggest vindictiveness, but only reveal the judge's disagreement with the decision. Moore also argues that the fact that the district court departed upward to the same sentence as previously imposed reflects vindictiveness. However, the district court supplied a legitimate reason for his upward departure that does not reflect vindictiveness. *See supra* Issue II. The remarks and sentence do not demonstrate actual vindictiveness and do not justify remand for resentencing.