**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-51227**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**FREDERIC BOURDIN, a.k.a. Nicholas Patrick Barclay, a.k.a.**
**Frederic Pierre Bourdin, a.k.a. Shedgin Guteyere, a.k.a. Benjamin**
**Kent, a.k.a. Jimmy Peter Manfred Morins, a.k.a. Shadjan Raskovic,**
**a.k.a. Marc Selopin, a.k.a. Thomas Wilson, a.k.a. Robin Morins,**
**a.k.a. Arnaud Orions,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Western District of Texas**
**(SA-98-CR-128-ALL)**
_____

November 19, 1999

Before DAVIS, JONES, and Magill[*], Circuit Judges.

EDITH H. JONES, Circuit Judge:[**]

On September 9, 1998, Appellant Frederic Bourdin pled guilty to: 1) fraudulently obtaining a passport, in violation of 18 U.S.C. §1542; 2) perjury, in violation of 18 U.S.C. §1621; and 3) possession of a fraudulent document, in violation of 18 U.S.C. §1546(a). On December 17, 1998, the district court departed upward from the Sentencing Guidelines and sentenced him to 71 months of

---

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

imprisonment.[1]  Because the district court's upward departure was reasonable in light of the facts of the case, this Court affirms.

**FACTS**

In 1997 in Madrid, Spain, Frederic Bourdin began representing himself as Nicholas Barclay, an American boy missing since 1994.  In the fall of 1997, Carrie Gibson, Nicholas Barclay's sister, flew to Spain to meet him.  In October, Bourdin obtained a United States passport under the name Nicholas Barclay, so that he could accompany Gibson to the United States.  For the next five months, Bourdin lived with Gibson and her family in San Antonio, Texas as Nicholas Barclay.

During the same period, FBI Special Agent Nancy Fisher began an investigation as to whether Frederic Bourdin, as "Nicholas Barclay," was actually Nicholas Barclay.  During the course of that investigation, Bourdin stated that he had been rescued by a man named Jonathan Duran.  Agent Fisher then spent numerous hours trying to locate Duran.  When she eventually asked Bourdin to do so for her, Bourdin pretended to call Duran and then informed Agent Fisher that Duran did not want to talk to her.  In addition, Bourdin agreed to provide a blood sample only then to refuse after arriving at the doctor's office with Agent Fisher.

On February 24, 1998, FBI employees obtained Bourdin's fingerprints in San Antonio and confirmed with Interpol records that he was not Nicholas Barclay, but Frederic Bourdin.  The documents provided by Interpol officials indicated that Bourdin

---

[1]The district court also imposed a three-year term of supervised release, a $10,000 fine and a $300 special assessment.

used numerous aliases and had a foreign criminal history of behavior similar to the behavior exhibited in this case.  Bourdin was arrested on March 6, 1998.

At sentencing, the district court determined that Bourdin's offense level was 15 and his criminal history category was I, producing a guideline sentence range of 18 to 24 months' imprisonment.  The court then departed upward 10 levels and imposed a sentence of 71 months' imprisonment.  In doing so, the judge stated clearly that the departure was based on the nature and extent of Bourdin's continued obstructive behavior and the harm he inflicted on various victims, particularly the family of Nicholas Barclay.  It also stated that it viewed all the reasons in the Government's motion for upward departure, which included the argument that a criminal history category of I did not adequately reflect the criminal history that Bourdin deserved as a result of his criminal history in Europe, as reasons to depart upwards.

On appeal, Bourdin argues that the court's 10-level increase was unreasonable.  Bourdin interprets the district court's departure as based only on Bourdin's obstructive behavior and the harm to vulnerable victims.  Because the departure was greater than the increase afforded those factors under the guidelines the district court analogized to, Bourdin argues that the increase was unreasonable.  Bourdin further argues that, because the district court did not clearly include the inadequacy of his criminal history category in its oral statement describing its reasons for upwardly departing, this Court cannot interpret the upward

departure as based also on the inadequacy of his criminal history category.

## STANDARD OF REVIEW

This Court reviews a district court's decision to depart from the Sentencing Guidelines for abuse of discretion.  See <u>United States v. McKenzie</u>, 991 F.2d 203, 204 (5th Cir. 1993).

## DISCUSSION

The district court may depart from the Sentencing Guidelines due to aggravating or mitigating circumstances not considered or inadequately considered by the guidelines.  See 18 U.S.C. §3553(b); U.S.S.G. §5K2.0.  A departure from the guidelines will be affirmed if the district court offers acceptable reasons for the departure and the departure is reasonable.  See <u>United States v. Lambert</u>, 984 F.2d 658, 663 (5th Cir. 1993).  This Court has upheld as reasonable departures that were over several times as much as the initial guideline range, and has stated that "the mere fact that a departure sentence exceeds by several times the maximum recommended under the Guidelines is of no independent consequence in determining whether the sentence is reasonable."  <u>United States v. Roberson</u>, 872 F.2d 597, 606 n.7 (5th Cir.), <u>cert.</u> <u>denied</u>, 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989).

In this case, appellant does not contest that the district court fulfilled prong one of the <u>Lambert</u> test.  In any case, the district court clearly articulated at least two acceptable reasons for an upward departure – Bourdin's obstructive behavior and the harm he inflicted on vulnerable victims.  These reasons are analogous to U.S.S.G. §3A1.1 and §3C1.1 and are thus

**4**

based on the policies underlying the Guidelines.  See United States v. Moore, 997 F.2d 30, 36 (5th Cir. 1993) (stating that a district court's justification for departure from the initial guideline range must be based on the policies underlying the Guidelines).

Appellant focuses on prong two of the above test. Bourdin argues that the district court acted unreasonably in imposing a sentence commensurate with a 10-level increase, rather than the 4-level increase that the unavailable, but analogous, guidelines provide.

Although the use of analogous guidelines indicates that the district court has articulated acceptable reasons for departure, the district court is not constrained to impose an increase commensurate with that of the guideline.  Bourdin's behavior was both egregious and well outside the heartland cases covered by the guidelines.  Thus, the district court acted within its discretion in departing upward 10 levels and imposing a 71-month sentence of imprisonment.

Because we find that the district court could reasonably have based its upward departure on Bourdin's obstructive behavior and the harm he inflicted on vulnerable victims, we do not reach the question whether the district court also based its departure on the inadequacy of Bourdin's criminal history category.

**AFFIRMED**.