**UNITED STATES COURT OF APPEAL**
**FIFTH CIRCUIT**

_____

No. 93-7552
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLIE SCOTT,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Mississippi
_____

(March 21, 1995)

Before SMITH and EMILIO M. GARZA, Circuit Judges, and BERRIGAN,
District Judge.[*]

EMILIO M. GARZA, Circuit Judge:

Charlie Scott was convicted by a Mississippi jury of
conspiracy to possess with the intent to distribute crack cocaine,
*see* 21 U.S.C. § 846 (1988), possession with the intent to
distribute crack cocaine, *see* 21 U.S.C. 841(a)(1) (1988), and
possession with the intent to distribute crack cocaine within 1,000
feet of a school, *see* 21 U.S.C. § 845(a) (1988).  Scott appeals his
conviction, and we affirm.

_____

[*]    District Judge for the Eastern District of Louisiana, sitting by
designation.

Charlie Scott plead guilty in district court to possessing, with the intent to distribute, crack cocaine, and to distributing crack cocaine. On appeal, this Court vacated Scott's plea on the grounds that he was not fully advised of its consequences, and ordered that he be allowed to replead. Julie Anne Epps, Scott's appointed counsel in his appeal to this Court, accepted appointment as his trial counsel. Scott plead not guilty, and the district court set the case for trial.

Much of the trial evidence was the product of a joint investigation by the FBI and local police (the "government investigation") of a group of individuals suspected of organizing for the purpose of selling crack cocaine. One of the individuals was Charlie Scott, whom the agencies suspected of selling crack cocaine, supplied to him by Rodney Gulley, from the convenience store Scott owned. At Scott's trial, the prosecution entered into evidence audio tapes of Scott selling crack cocaine to an informant, Willie Earl Grady, in Scott's store. These transactions were secretly taped by Grady while an FBI agent conducted surveillance of Scott's store from a car parked outside.

A jury found Scott guilty of conspiring with at least one other person to possess, with the intent to distribute, crack cocaine. The jury also found Scott guilty of having, on two separate days, possessed crack cocaine with the intent to distribute. Scott appeals his conviction, arguing that (1)

insufficient evidence supports the jury verdict, (2) there is no evidence linking the taped sales to any conspiracy, (3) the Government either knowingly relied on false testimony or concealed evidence materially favorable to Scott, (4) the Government failed to provide Scott in a timely manner with a log of phone calls allegedly placed by him, (5) the district court's denial of Scott's request for a continuance deprived him of his rights to counsel and due process, (6) the district court erred in denying Scott's request for an expert, (7) the district court abused its discretion in admitting extrinsic offense evidence against him, (8) the district court erred in refusing to allow Grady's criminal record to be admitted into evidence, and (9) the district court gave inadequate reasons for giving Scott a harsher sentence following the trial than he had received pursuant to his guilty plea.

II

A

Scott contends that insufficient evidence supports the jury's verdict. In our review of the sufficiency of the evidence supporting Scott's conviction, "we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt."[1]

---

[1] We apply this standard of review because Scott preserved his sufficiency of the evidence claim by moving for a judgment of acquittal at trial. A stricter standard is applied when a defendant fails to preserve a sufficiency claim. *See United States v. Galvan,* 949 F.2d 777, 782-83 (5th Cir. 1991) (applying "manifest

-3-

*United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir.),
*cert. denied*, ___ U.S. ___, 112 S.Ct. 2952, 119 L. Ed. 2d 575
(1992). "We accept all credibility choices that tend to support
the jury's verdict." *United States v. Anderson,* 933 F.2d 1261,
1274 (5th Cir. 1991). Moreover, juries are "free to choose among
all reasonable constructions of the evidence." *United States v.
Chaney,* 964 F.2d 437, 448 (5th Cir. 1992).

1

Scott contends that insufficient evidence supports the jury's
determination that he twice possessed, with the intent to
distribute, crack cocaine. Scott points to what he believes are
inconsistencies between Grady's tapes and FBI surveillance reports.
The Government argues that while their surveillance may have been
incomplete, the tapes constituted sufficient evidence of the sales.

At trial, the Government introduced into evidence audio tapes
of two crack cocaine sales. An FBI agent who was familiar with
Scott's voice testified that the voice of the seller belonged to
Scott, that he had wired Grady with a tape recorder on the two
relevant days, and that he had observed Grady arrive at and leave
from Scott's store on one of those days. Viewing this evidence in
the light most favorable to the jury's verdict, we conclude that a
rational jury could have found beyond a reasonable doubt that, on
two separate days, Scott delivered crack cocaine to Grady. *See*

---

miscarriage of justice" standard where defendant failed to move for
a directed verdict or a judgment of acquittal).

*Pruneda-Gonzalez*, 953 F.2d at 193 (reciting standard of review for claims of insufficiency of the evidence).

2

Scott contends that there is no evidence connecting the drug sales with a conspiracy involving at least one other person to possess, with the intent to distribute, crack cocaine. The Government argues that the trial testimony of Scott's supplier, Gulley, provided sufficient evidence of the connection between the sales to Grady and the conspiracy.

Although the conspiracy charge in the indictment made reference to the two transactions between Scott and Grady, "[p]roof of an overt act in furtherance of the conspiracy is not required." *United States v. Fierro*, 38 F.3d 761, 768 (5th Cir. 1994) (discussing elements of drug conspiracy). The district court instructed the jury that "the government need not prove that all of the details of the scheme alleged in the indictment were actually agreed upon or carried out." The jury need only have found "(1) the existence of an agreement to possess narcotics with the intent to distribute, (2) knowledge of the agreement, and (3) voluntary participation in the agreement." *Id.* at 768. Gulley testified that Scott had approached him and asked him to supply him with drugs, and that he supplied Scott with crack cocaine both directly and through an intermediary during the six months preceding Scott's arrest. Viewing this evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found

-5-

beyond a reasonable doubt that Scott conspired with at least one other person to possess, with intent to distribute, crack cocaine. *See Pruneda-Gonzalez*, 953 F.2d at 193 (reciting standard of review for claims of insufficiency of the evidence).

B

Scott contends that the trial court's denial of his motion for continuance deprived him of both his right to counsel and his right to due process.  In that motion, Scott's attorney, Julie Ann Epps, states that she learned of her appointment to represent Scott just under a month before his trial date.  Soon thereafter, the district court granted a motion from Epps that Scott be returned from his place of incarceration to the court's jurisdiction.  Epps first met with Scott six days before the trial began, on the day that he was returned to the court's jurisdiction.  Epps filed Scott's motion for continuance on that same day, and argued it on the first day of the trial, but it was denied by the district court.  Scott argues that his counsel was prevented from adequately preparing for trial by the combination of the delay in their first meeting and the demands of Epps' other professional obligations.

"This court will reverse a district court's decision denying a defendant's motion for continuance only when the district court has abused its discretion and the defendant can establish that he suffered serious prejudice." *United States v. Castro*, 15 F.3d 417, 423 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 127, 130 L. Ed. 2d 71 (1994).  We have emphasized that trial judges have broad

-6-

discretion in ruling on such motions. *See United States v. Correa-Ventura*, 6 F.3d 1070, 1074 (5th Cir. 1993). Whether a party complaining of inadequate preparation time was properly denied a continuance depends on (1) the amount of preparation time available, (2) whether the defendant took advantage of the time available, (3) the likelihood of prejudice from a denial, (4) the availability of discovery from the prosecution, and (5) the complexity of the case. *United States v. Kelly*, 973 F.2d 1145, 1148 & n.3 (5th Cir. 1992). "In review, we evaluate each situation on a case-by-case basis and normally consider only the reasons for continuance presented to the trial judge." *United States v. Cueto*, 611 F.2d 1056, 1060 (5th Cir. 1980); *see Ungar v. Sarafite*, 376 U.S. 575, 589-90, 84 S. Ct. 841, 850, 11 L. Ed. 2d 921 (1964) ("The answer must be found in the circumstances present in every case, particularly the reasons presented to the trial judge at the time the request is denied.").

Scott contends on appeal that the district court's denial of his motion for a continuance prejudiced him in several ways.[2] During the hearing on the motion, however, Epps made fewer claims. Epps told the district court that she had not had time to

---

[2]    Scott claims that his attorney needed additional time in which to investigate the crime scene, to interview witnesses, to do background checks on the Government's witnesses, to obtain witnesses to impeach the credibility of the Government's witnesses, to travel to the town in which Scott's store was located to obtain witnesses for the defense, and to locate a voice identification expert. Scott claims that he was further prejudiced because Epps did not have time to file any pretrial motions, prepare anything more than the most general jury instructions, or to prepare for objections she was likely to make to the Government's proposed instructions.

investigate Grady's employment claims or felony record, to interview any of the alleged co-conspirators, to develop jury instructions, or to research the particularities and application of 21 U.S.C. § 845(a). Epps also requested time to employ a voice expert, and stated that she needed time to obtain transcripts in a codefendant's case.

The district court found that Scott and Epps had "three and a half weeks or so" of preparation time, which the court stated was "sufficient time to investigate and prepare for" what it described as a "fairly simple drug case." The Government tendered discovery on the day that Epps was appointed, but she did not meet with the prosecuting attorney to view the discovery until two weeks later. Had Epps viewed the discovery at an earlier date, she would have had significantly more time in which to perform the tasks that Scott claims Epps was prevented from performing due to a lack of time.

Scott argues that until he was able to meet with her, Epps had no way of knowing that he would elect to go to trial rather than accept a plea bargain, and thus any preparation for trial would have been "unfocused."[3] We cannot agree. Having represented Scott in his appeal before this Court, Epps knew that Scott had expended

---

[3] In his reply brief, Scott states that:
[Epps] finds the government's contention that she should have spent the time between her appointment and her first interview with her client in some sort of unfocused investigation particularly ironic in view of the trial court's unwillingness to pay her for the time she did expend once she talked to Scott and discovered he did not want to accept a plea.

much time and effort in securing the opportunity to replead.  She did not need to meet with Scott to learn that she would be expected to submit jury instructions at trial, or that it would be advantageous to Scott's defense to have researched the laws under which Scott was charged.  Neither did Epps need to meet with Scott in order to investigate and interview the small number of witnesses and codefendants involved in his case.  Only the necessity of a voice expert was reasonably unforeseeable to Epps.

Scott failed to demonstrate to the court, however, how Epps' failure to obtain the testimony of a voice expert would prejudice him.  If a continuance is sought because of the unavailability of a witness, the movant must show the court that "due diligence has been exercised to obtain the attendance of the witness, that substantial favorable evidence would be tendered by the witness, that the witness is available and willing to testify, and that the denial of the continuance would materially prejudice the defendant."  *United States v. Rodriguez*, 15 F.3d 408, 411 (5th Cir. 1994) (quoting *United States v. Walker*, 621 F.2d 163, 168 (5th Cir. 1980), *cert. denied*, 450 U.S. 1000, 101 S. Ct. 1707, 68 L. Ed. 2d 202 (1981)).  Scott states in his brief on appeal that: "Given additional time, counsel could have located an expert who could have run a voice analysis and could have helped determine the integrity of the tapes.  Counsel knows of no local expert who could perform such tests."  Scott has not demonstrated due diligence in obtaining a voice expert, that such an expert would be available

and willing to testify, or that the testimony would be favorable if secured.  Thus, the district court's denial of Scott's motion for continuance was not an abuse of its discretion.

C

Scott claims that his conviction must be reversed because the Government either knowingly relied on false testimony or concealed materially favorable evidence from him.  This claim is based on Gulley's testimony that at the time he agreed to help the government investigation, he believed himself to be facing a minimum of ten years' imprisonment on drug charges absent any deal. Scott contends that the Government knew or should have known that this testimony was false, and that the statutory minimum that Gulley could receive absent a deal was 188 months' imprisonment. Scott argues further that even if the Government did not learn that Gulley's testimony was false until after they had used it against Scott, the Government should have revealed this information to Scott and to the court.

1

"To obtain a reversal on the grounds that the government relied on perjured testimony, the following must be shown: (1) the contested statements were actually false, (2) the statements were material, and (3) the prosecution knew that they were false." *United States v. Blackburn*, 9 F.3d 353, 357 (5th Cir.), *cert. denied*, ___ U.S. ___, 115 S. Ct. 102, 130 L. Ed. 2d 51 (1994). Gulley testified that at the time he agreed to cooperate with the

-10-

government investigation, an agreement that occurred before his sentencing, he believed himself to be facing a minimum of ten years' imprisonment absent a deal. Scott argues that at Gulley's sentencing hearing, the trial judge found that Gulley's minimum sentence was 188 months. This fact is irrelevant, however, because Gulley was questioned as to *his belief at the time he agreed to cooperate in the government investigation.* The Memorandum of Understanding that evidenced that agreement, which Scott himself introduced into evidence, states as follows: "It is further understood that the Court . . . is not required to accept the recommendation [of the United States Attorney], but may sentence Rodney Gulley to . . . a minimum of 10 years to life imprisonment . . . ." Because Gulley could reasonably have believed the United States Attorney's representation in the Memorandum of Understanding, Scott has failed to prove that the contested statement was actually false.

2

Scott argues in the alternative that the Government should have disclosed Gulley's sentencing transcript, which contained the sentencing court's finding as to the minimum sentence Gulley faced absent a deal. In *Brady v. State of Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or

bad faith of the prosecution."  *Id.* at 87, 83 S. Ct. at 1196-97.

"When the `reliability of a given witness may well be determinative
of guilt or innocence,' nondisclosure of evidence affecting
credibility falls within [the] general rule" of *Brady.*  *Giglio v.
United States,* 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d
104 (1972), *quoted in United States v. Bagley,* 473 U.S. 667, 677,
105 S. Ct. 3375, 3381, 87 L. Ed. 2d 481 (1985).  However,
nondisclosure deprives the accused of a fair trial only if the
evidence is material, in the sense that "there is a reasonable
probability that, had the evidence been disclosed to the defense,
the result of the proceeding would have been different."  *United
States v. Weintraub,* 871 F.2d 1257, 1261 (5th Cir. 1989) (quoting
*Bagley,* 473 U.S. at 682, 105 S. Ct. at 3383).  Because Gulley could
reasonably have believed, after reading the Memorandum of
Understanding, that he faced a minimum of ten years' imprisonment
at the time he agreed to cooperate in the government's
investigation, evidence that the trial judge found differently at
the sentencing hearing would not have affected Gulley's
credibility.

D

Scott contends that his sentence should be reversed because
the Government admitted into evidence a log of telephone calls
Scott allegedly made to Gulley's pager, which the prosecution did
not disclose until Scott's sentencing hearing.  Epps contends that
the evidence was a "complete surprise" to her, and that its

-12-

admission was prejudicial to Scott.  At sentencing, however, the district court may "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  *United States v. Bermea*, 30 F.3d 1539 (5th Cir. 1994) (quoting U.S.S.G. § 6A1.3(A)).  Thus, the trial court's admission of the log was not reversible error.

E

Scott argues that the district court erred in not granting his request under 18 U.S.C. § 3006A(e)(1) (West Supp. 1993) for an expert to refute the FBI agent's testimony that the voice on the audio tapes was Scott's.  Section 3006A(e)(1) provides as follows:

> (e) Services other than counsel))
> (1) Upon request))Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for adequate representation may request them in an ex parte application.  Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court . . . shall authorize counsel to obtain the services [at government expense].

18 U.S.C. § 3006A(e)(1).  Scott alleges that he made such a request in the hearing on his motion for continuance.

In the course of that hearing, Scott's counsel stated: "Mr. Scott also has possibly some legal defenses to the charges. . . . There is a question about whose voice appears on the tapes Mr. Grady has identified as Mr. Scott, and we would request time to employ someone to help us with the voice analysis on that."  Scott admits that the statement was not a formal § 3006A(e)(1) motion,

-13-

and we will not construe it as a § 3006A(e)(1) request. Scott's counsel never referred to the statute, or to Scott's financial ability to procure an expert. The request made by counsel was for "time to employ" an expert, not for permission to employ an expert at government expense. "The rights established by 18 U.S.C.A. 3006A(e) are procedural, and the failure to make a timely motion or request waives the necessity for the court's consideration of an appointment of an expert witness." *United States v. Patterson*, 438 F.2d 328, 329 (5th Cir. 1971). Scott's failure to make a formal § 3006A(e) motion or request thus relieved the district court of any responsibility to authorize the expenditure of government funds on a voice expert.

F

Scott argues that the district court abused its discretion in admitting extrinsic offense evidence against him. Over Scott's objection, the district court allowed a man named Earl Brookins to testify that he and Scott had once had an agreement that Brookins could sell cocaine out of Scott's store.

We review the district court's evidentiary rulings and determinations of relevance for abuse of discretion. *United States v. Palmer*, 37 F.3d 1080, 1084 (5th Cir. 1994). Under Rule 404(b) of the Federal Rules of Evidence, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Extrinsic offense evidence may be admissible for

other purposes, however, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* "We determine the admissibility of extrinsic offense evidence by applying a two-part test. First, the extrinsic offense must be relevant to an issue other than the defendant's character. Second, the probative value of the extrinsic evidence must not be substantially outweighed by its prejudicial effect." *United States v. Ponce*, 8 F.3d 989, 993 (5th Cir. 1993).

The district court admitted the extrinsic offense evidence as evidence of Scott's intent, absence of mistake or accident, motive, opportunity, and plan. Scott attacks each of these justifications. Scott argues that the Government's offer of the agreement in order to show intent amounted to no more than proof of character in order to show action in conformity therewith. He also argues that intent evidence should not have been allowed because he offered to stipulate to intent. Scott further claims that motive, opportunity, plan, and absence of mistake or accident were not issues at trial.

The evidence of Scott's agreement with Brookins was "relevant to an issue other than the defendant's character," *see id.*, that issue being Scott's intent to commit the acts charged in the indictment. The relevancy of the evidence "must be assessed by comparing the state of mind required for the past and present offenses." *See United States v. Devine*, 934 F.2d 1325, 1346 (5th

-15-

Cir. 1991), *cert. denied*, ___ U.S. ___, 112 S. Ct. 954, 117 L. Ed. 2d 121 (1992). As the Government asserted at trial, Scott's agreement with Brookins "goes to show Scott's state of mind was conducive to allowing the distribution of crack cocaine from his store." The agreement is also evidence that Scott's state of mind was conducive to conspiring to distribute cocaine from his store.

Scott did not make his offer to stipulate intent until after both parties had rested. Therefore, when the Government put on its case-in-chief, it had no assurances as to what Scott's defenses might be. To prove each charge against Scott, the Government was obliged to prove that Scott intended to distribute crack cocaine. "[W]here, as here, `intent is not normally inferable from the nature of the act charged,' and the defendant fails to give enforceable pre-trial assurances that he intends not to dispute criminal intent, the Government's case-in-chief may include such extrinsic offense evidence as would be admissible if intent were actively contested." *United States v. Webb*, 625 F.2d 709, 710 (5th Cir. 1980).

The likelihood of prejudice was further diminished by the fact that the district court instructed the jury members, as Scott requested, that they "must not consider any of [the extrinsic offense] evidence in deciding if the defendant committed the acts charged in the indictment." Thus limited, the jury "is presumed to have followed the instruction." *United States v. Hopkins*, 916 F.2d 207, 218 (5th Cir. 1990) (finding no error in trial court's

admission of extrinsic evidence of prior bad act where "court gave an appropriate limiting instruction").  For these reasons, the district court did not abuse its discretion in admitting evidence of Scott's agreement with Brookins.

G

Scott argues that the district court erred in refusing to allow the criminal record of the government informant, Grady, to be entered into evidence.[4]  Scott suggests that the evidence was necessary to demonstrate Grady's dishonesty, his lack of integrity, his true motives for offering his assistance to the government, his unreliability as a witness, and his drug addiction.

Rule 806 of the Federal Rules of Evidence provides that "when a hearsay statement has been admitted into evidence, the credibility of the declarant may be attacked as if the declarant had testified as a witness."  *United States v. Abadie*, 879 F.2d 1260, 1266 (5th Cir.), *cert. denied*, 493 U.S. 1005, 110 S. Ct. 569,

---

[4]     At trial, Epps, the district court, and Richard Starrett, the Government's attorney, engaged in the following exchange:
> MS. EPPS:   And you found that [Grady] had quite an extensive criminal record, is that correct?
> WITNESS:  He had a criminal record, that's correct.
> MS. EPPS:  Would you tell us what that criminal record is?
> MR. STARRETT: Your Honor, I have an objection.  She's asking this witness to testify about the criminal record of another individual who is not a witness at this trial.  I think that's improper.
> THE COURT:  Sustained.
> MS. EPPS:  Your Honor, we would offer the evidence to show Mr. Grady's motivation for providing the information that he did.
> THE COURT:  Sustain the objection.

It is not evident from the record precisely why the district court sustained the government's objection.  We have observed in other cases that the lower court "harbored the misconception, reinforced by the government, that hearsay declarants cannot be impeached if they fail to testify at trial." *United States v. Moody*, 903 F.2d 321, 328 (5th Cir. 1990).

-17-

107 L. Ed. 2d 563 (1989); Fed. R. Evid. Rule 806. Thus, any evidence that would have been admissible to impeach Grady had he testified was admissible to impeach Grady even though he did not testify.

However, Scott failed to preserve the trial court's exclusion of Grady's criminal record for review. Excluded evidence is sufficiently preserved for review "when the trial court has been informed as to what counsel intends to show by the evidence and why it should be admitted, and this court has a record upon which we may adequately examine the propriety and harmfulness of the ruling." *United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994). Scott informed the trial court that he wished "to show Mr. Grady's motivation for providing the information that he did," and made an offer of proof of the criminal record itself. Such a global offer was not sufficient to preserve error, *see id.* at 1407, unless Scott intended to introduce into evidence the entire record.[5] Scott made no offer of proof as to which portions of the record were probative of Grady's motivation. *See Carroll v. Morgan*, 17 F.3d 787, 790 (5th Cir. 1994) (finding exclusion of publications harmless where party failed to make an offer of proof as to which passages were relevant). Scott made no offer of proof as to what portions of the record were even admissible. *See United*

---

[5]     The entire record would not have been admissible to impeach Grady because it included several convictions over ten years old, such as a disorderly conduct conviction from 1965 and a conviction for the sale of marijuana from 1971. Under Rule 609(b) of the Federal Rules of Evidence, which governs the use of extrinsic offenses evidence to impeach witnesses, "evidence of a conviction more than 10 years old . . . is not admissible."

*States v. Paden*, 961 F.2d 517, 521 (5th Cir.) (finding no abuse of discretion in trial court's refusing to admit juvenile records under evidentiary rule where party failed to indicate what portions would be admissible under the rule), *cert. denied*, ___ U.S. ___, 113 S. Ct. 392, 121 L. Ed. 2d 300 (1992).  Because Scott did not sufficiently inform the trial court what he intended to show by introducing Grady's criminal record into evidence, why it should be admitted, and what portions were admissible under what rule of evidence, Scott did not preserve this issue for appeal.

H

Lastly, Scott alleges that the district court gave inadequate reasons for giving him a harsher sentence following the jury verdict than he had received pursuant to his guilty plea.  Although the court reasoned that at trial Scott revealed "additional information about his involvement in the drug dealing and the amounts of drugs involved in the conspiracy which had not been available to the Court at the time of the first sentencing," Scott suggests that the increase from 188 months to 211 months was punishment for his challenging his guilty plea.

"Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina v. Pearce*, 395 U.S. 711, 725, 89 S. Ct. 2072, 2080, 23 L. Ed. 2d 656 (1969) (quoted in *United States v. Moore*, 997 F.2d 30, 37 (5th Cir.), *cert. denied*, 114 S. Ct. 647, 126 L. Ed. 2d 605

(1993)), *overruled on other grounds*, *Alabama v. Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). "In situations where a harsher penalty is imposed by the same judge on resentencing, a defendant is entitled to a presumption that the sentence is vindictive . . . ." *Moore*, 997 F.2d at 38.

The defendant must, however, make a contemporaneous objection to his sentence on grounds of vindictiveness to preserve his claim of *Pearce* error for appeal. *Vontsteen*, 950 F.2d at 1090. Because Scott failed to object to his sentence at the time it was announced by the district court, we review Scott's vindictive sentencing claim for plain error. *See United States v. Vontsteen*, 950 F.2d 1086, 1089 (5th Cir.), *cert. denied*, ___ U.S. ___, 112 S. Ct. 3039, 120 L. Ed. 2d 908 (1992). Plain errors are those errors "which are so conspicuous that `the trial judge and prosecutor were derelict in countenancing [them,] even absent the defendant's timely assistance in detecting [them.]'" *United States v. Calverley*, 37 F.3d 160 (5th Cir. 1994) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 163, 102 S. Ct. 1584, 1592, 71 L. Ed. 2d 816 (1982)). Given that Scott's trial provided the trial court with new information as to the level at which Scott was personally involved in dealing crack cocaine and the amount of drugs involved in the conspiracy, it was not plain error for the court to impose a harsher sentence on Scott following the jury verdict than he had received after pleading guilty.

III

For the foregoing reasons, we AFFIRM the district court's decision.