IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 29, 2008

Charles R. Fulbruge III
Clerk

No. 07-50712
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

PRISCILLA SETTLE

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas, Waco
USDC No. 6:06-CR-00172

Before WIENER, GARZA, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Patricia Settle ("Appellant") appeals her conviction under 18 U.S.C. §§ 7, 13, and 113(a)(6) for assaulting and inflicting serious bodily injury on her 13 month-old daughter Iris Deziree Settle ("Iris"). Appellant contends that the district court erred when it: (1) denied her motion to admit her son's testimony under Federal Rule of Evidence 807; (2) found inadmissible evidence of Iris's purported reaction to men; and (3) applied a seven-level enhancement to her

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sentence.  For the reasons below, Appellant's arguments lack merit, and we AFFIRM the judgment of the district court.

I.

On June 7, 2006, Appellant was shopping at Wal-Mart when she received a call from her boyfriend Joshua Rivera, who told her that Iris had suddenly started convulsing and that her body had gone limp.  Appellant then returned home and drove Iris to the Darnell Community Hospital.  Iris was unconscious when she arrived at the hospital.  After emergency resuscitation, the doctors diagnosed Iris as having suffered severe head trauma and found extensive bruising in multiple stages of healing.  Appellant explained to medical personnel that Iris's bruises resulted from her falling a lot.  Later that evening, a special agent from the United States Army's Criminal Investigation Division ("CID") interviewed her and her son, Denair.[1]  During the interview, Appellant recounted how she had left Iris and her two sons with Rivera.  In a written statement, Appellant also contended that both Rivera and her husband were physically abusive and that Rivera had injured Iris earlier.

Iris was subsequently transferred to Scott & White Hospital for treatment where she initially was in a coma.  Iris's attending physician concluded that Iris's injuries were consistent with "shaken baby syndrome."  The physician also found that Iris had: (1) become blind; (2) sustained permanent brain damage; and (3) suffered permanent injury to her motor skills.

On June 26, 2006, Appellant voluntarily took a polygraph test.  After the test, Appellant confessed to the examiner that she had shaken Iris a few days before she took her to the hospital because a phone conversation with her husband had made her frustrated and emotional.  Appellant also retracted her accusations against her husband and Rivera.  But by the time her trial began,

---

[1] Appellant was married to a soldier then stationed in Iraq.

Appellant had recanted her confession. Moreover, Appellant contended that her prior accusations against her husband and Rivera were in fact truthful.

At trial, Appellant attempted to show that it was Rivera who injured Iris. Appellant testified that she left her children alone with Rivera on four occasions, and after one of these occasions, she discovered a bruise on Iris's forehead along with bruises on her rib cage. In earlier testimony, Rivera claimed that the bruise on the forehead resulted from Iris having simply slipped on a toy car and that he was the one who called Appellant's attention to the bruising on Iris's rib cage.

Appellant's counsel also tried to implicate Rivera by admitting evidence that Iris recently began to react adversely to men. Appellant's counsel asked her husband how his relationship with Iris had changed after Iris was admitted into the hospital. Appellant's husband testified that, as opposed to before, she would start screaming now when he tried to "grab" her. The government objected to this line of questioning on the basis of relevancy, and the court sustained the objection. Appellant's counsel later called her mother, Patricia Jimenez, to testify, and, at the end of her testimony, Appellant's counsel stated that he would have asked Jimenez about Iris's reaction to men but for the court's earlier ruling.

Finally, Appellant tried unsuccessfully to qualify Denair as a witness to testify on her behalf. Appellant then allegedly moved to have Denair's out-of-court statements admitted under Federal Rule of Evidence 807, and, according to Appellant, the district court denied her motion.

After a three-day trial, the jury convicted Appellant. On May 30, 2007, the district court sentenced Appellant to 48 months in prison. In sentencing Appellant, the district court applied a seven-level enhancement under U.S.S.G. § 2A2.2(b)(3)(C) because the victim had sustained a permanent or life threatening injury.

II.

Appellant challenges two evidentiary rulings on appeal. First, Appellant claims that the district court's refusal to admit Denair's out-of-court statements under Federal Rule of Evidence 807 was improper. Second, Appellant argues that the district court erred when it barred admission of testimony regarding Iris's reaction to men on relevancy grounds. "We review the district court's evidentiary rulings and determinations of relevance for abuse of discretion." United States v. Scott, 48 F.3d 1389, 1396 (5th Cir. 1995).

Appellant's contention that the district court erred when it refused to admit Denair's out-of-court statements under Rule 807 fails because Appellant presents no evidence that the district court ever made this ruling. Appellant claims that the district court held a hearing at which it barred admission of these statements. Appellant acknowledges in her brief, however, that the record before us does not reflect that this hearing ever took place, and that Appellant plans to "fil[e] a motion to supplement the record to include that hearing." Because Appellant never filed this motion, there is no evidence that the issue of whether Denair's out-of-court statements were admissible under Rule 807 was ever presented to the district court. Therefore, we decline to reach this issue here. See United States v. Clements, 73 F.3d 1330, 1336 (5th Cir. 1996) (declining to determine admissibility of evidence when the appellant did not present the issue to the district court).

Appellant's argument that the district court erred when it barred admission of testimony regarding Iris's reaction to men is also unpersuasive. While we agree that this testimony is relevant under Federal Rule of Evidence 401, we find that it is nonetheless inadmissible under Federal Rule of Evidence 403 because it is unduly prejudicial. See Metallurgical Indus. Inc. v. Fourtek, Inc., 790 F.2d 1195, 1207 (5th Cir. 1986) ("We may not

disturb the district court's exclusion of the evidence, however, if that ruling can be upheld on other grounds, regardless of whether the district court relied on those grounds.").

Evidence of third-party guilt is admissible if the evidence by itself or along with other evidence demonstrates a nexus between the third party and the crime charged. United States v. Jordan, 485 F.3d 1214, 1219 (10th Cir. 2007). This nexus, however, cannot be speculative because "speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice." Id. Here, the only admitted evidence Appellant has offered demonstrating that Rivera was the actual perpetrator consists of: (1) her own speculation that Rivera hurt Iris; and (2) her testimony that Rivera had watched Iris on four occasions, including on the day she took Iris to the hospital. We find that this evidence and the testimony Appellant wanted to admit concerning Iris's reaction to men amount only to speculative blaming, and, therefore, this testimony is inadmissible under Federal Rules of Evidence 403.

### III.

Finally, Appellant argues that the district court erred when it applied a seven-level enhancement to her sentence under U.S.S.G. § 2A2.2(b)(3)(C). "We review a district court's interpretation of the Guidelines de novo, and its findings of fact for clear error." United States v. Claiborne, 132 F.3d 253, 254 (5th Cir. 1998) (per curium).

Under U.S.S.G. § 2A2.2(b)(3)(C), the district court may apply a seven-level enhancement to a conviction for aggravated assault if the assault resulted in "[p]ermanent or [l]ife-[t]hreatening [b]odily [i]njury." For the purposes of the Sentencing Guidelines, the application note 1(J) under U.S.S.G. § 1B1.1 defines the term "permanent or life threatening bodily injury" as: "[an] injury involving a substantial risk of death; loss or

substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent."

Appellant contends that Iris did not suffer a permanent or life threatening bodily injury because Iris is slowly recovering, and Appellant speculates that Iris "may have little or no lingering affects [sic] from [her] injury." Appellant's argument lacks merit because Iris, who needed emergency resuscitation at the hospital where she subsequently fell into a coma, clearly suffered a life threatening injury. An injury qualifies as permanent or life threatening under the Sentencing Guidelines if it is substantial and permanent <u>or</u> if it posed "a substantial risk of death." Here, evidence that Iris suffered an injury that posed a substantial risk of death by itself is enough to make her injury permanent or life threatening under the Sentencing Guidelines. Therefore, the district court did not err when it applied a seven-level enhancement to Appellant's sentence.

IV.

For the reasons above, we AFFIRM the judgment of the district court.