IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 9, 2008

Charles R. Fulbruge III
Clerk

No. 07-20828

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MIGUEL ANGEL FUENTES-JAIMES

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CR-225-1

Before SMITH, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Having pleaded guilty, Miguel Angel Fuentes-Jaimes contests only the district court's calculation of his advisory guidelines sentencing range for conspiring to smuggle aliens into the United States. In that regard, he asserts his offense-level was improperly increased for: (1) brandishing a firearm, and (2) smuggling, transporting, or harboring six aliens. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.

On 3 May 2007, Immigration and Customs Enforcement (ICE) received a tip from the Mexican consulate in Houston, Texas, regarding alien-smuggling activities. Subsequently, Arellano told ICE Agents he had transferred $3,400 to an individual in order to have his brother, Arellano-Martinez, and his cousin, Martinez-Delgado, smuggled into the country. He informed ICE the smugglers were demanding another $6,000 to release the pair.

Undercover ICE Agents contacted the smugglers, who confirmed it would cost an additional $6,000 to smuggle Arellano and Martinez. Those Agents agreed to meet the smugglers, Fuentes and Villa-Chavez, at a gas station south of Houston.

At the agreed-upon location, the Agents observed the smugglers arrive in their vehicle. Fuentes exited the vehicle and met the Agents. He instructed them to give the money to the front right passenger waiting in the smugglers' automobile, later confirmed to be Villa. Arellano and Martinez were both present with Villa in the vehicle. Upon approaching the automobile on the passenger side, an Agent observed Villa place a pistol into the area between the passenger seat and the passenger door of the vehicle.

Fuentes and Villa were placed under arrest. Villa waived his Miranda rights and advised the Agents there was a stash house near the gas station. The Agents also interviewed Martinez, one of the smuggled aliens, who asserted there were four more smuggled aliens, three guards, and an assault rifle at that house.

Soon thereafter, the Agents arrived at the house, finding it unoccupied but with the front door open, lights on, and a television on. The ICE Agents found two "pollo lists" (lists of smuggled aliens and smuggling fees) and a rifle in an open closet in the living room.

The Agents presented a photo line-up to Arellano, who was also named in the pollo lists; he identified Fuentes as the stash house's guard and the person who sometimes made telephone calls to family members demanding money. He also identified Fuentes as the man who drove the vehicle to the "buyout" (during which the money would be exchanged for the smuggled aliens). He further informed the Agents that Villa was the passenger in the vehicle, and that Villa carried a pistol in his waistband. Additionally, Martinez identified Fuentes as the person who would call family members and demand smuggling fees. (At his re-arraignment, Fuentes admitted these facts.)

On 31 May 2007, Fuentes was indicted for conspiring with Villa to transport and harbor undocumented aliens within the United States for commercial advantage and private financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). The indictment alleged Fuentes and Villa transported aliens across the border, holding them in Houston, Texas, until relatives or friends paid for their release. On 12 July 2007, Fuentes pleaded guilty without a plea agreement.

The subsequent Presentence Investigation Report (PSR) provided further details about the offense, including: (1) the ICE Agents were contacted during the investigation via a cellular phone number matching that of a cell phone seized from Fuentes upon his arrest; and (2) Martinez asserted he observed Fuentes give a pistol to Villa as they were leaving the stash house, en route to the buyout. The PSR's assessment of Fuentes' relevant conduct is that he was "an average participant in an arranged alien buyout". The PSR recommended that he be held responsible for the pistol he provided to Villa, that Agents found in the vehicle Fuentes and Villa jointly occupied. Furthermore, it determined Fuentes' relevant conduct included smuggling six aliens, four of whom escaped before the Agents arrived at the stash house.

Under the applicable 2006 version of the Sentencing Guidelines, the PSR scored Fuentes at a base-offense level 12 under Guideline § 2L1.1(a)(3) (governing sentences for alien-smuggling offenses). This was increased three levels, pursuant to Guideline § 2L1.1(b)(2)(A), based upon the involvement of six undocumented aliens in the smuggling and harboring conspiracy; four levels under Guidelines §§ 2L1.1(b)(5)(B) and 1B1.1, cmt. n.1(C), because a firearm was brandished; and, finally, two levels under Guideline § 2L1.1(b)(8), because aliens were detained through coercion and threat. The PSR recommended Fuentes receive a three-level downward adjustment for acceptance of responsibility, under Guideline § 3E1.1, resulting in a total offense level of 18. Fuentes had no prior criminal history; thus, the advisory sentencing range was 27 to 33 months' imprisonment.

Fuentes filed written objections to the PSR regarding, inter alia: (1) the four-level increase for the involvement of six aliens in the offense; and (2) the two-level enhancement (upward adjustment) for "brandishing" a firearm. (Enhancements under Guideline § 2L1.1 are graduated, depending on the level of involvement of a firearm or dangerous weapon in an offense; Fuentes conceded the two-level increase for possession of a firearm.)

Along that line, at sentencing on 1 November 2007, Fuentes contended he should not be held accountable for six aliens because there was no evidence that Martinez knew whether the other people in the stash house were smuggled aliens or participants in the offense. Further, he maintained the increase for brandishing a weapon was erroneous because there was no direct proof the firearm was used to intimidate the aliens.

The district court overruled Fuentes' objections to the PSR and sentenced him, inter alia, to 27 months' imprisonment. It stated it had considered both the Guidelines as advisory and the 18 U.S.C. § 3553(a) factors (determining they did not support a departure from a guidelines-range sentence).

4

Although post-Booker, the Guidelines are advisory only, and an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the guidelines sentencing range for use in deciding on the sentence to impose. Gall v. United States, 128 S. Ct. 586, 596 (2007). In that respect, its application of the guidelines is reviewed de novo; its factual findings, only for clear error. E.g., United States v. Cisneros-Gutierrez, 517 F.3d 751, 764 (5th Cir. 2008); United States v. Villegas, 404 F.3d 355, 359 (5th Cir. 2005).

A.

Fuentes asserts: under Guideline § 2L1.1(b)(5)(B), a firearm must be displayed to another person, with the intent to intimidate that person, in order to be considered "brandished" for purposes of the four offense-level increase. See U.S.S.G. § 1B1.1, cmt. n.1(C). He maintains nothing in the record reflects an intent to intimidate Martinez, the alien who reported seeing him transfer the pistol to Villa, nor did Martinez report feeling intimidated.

In this regard, Fuentes contends the mere possibility the firearm was "brandished", as defined by the Guidelines, is insufficient to meet the Government's burden of establishing, by a preponderance of the evidence, that he brandished the weapon. See U.S.S.G. § 6A1.3; United States v. Rodriguez, 523 F.3d 519, 524 (5th Cir. 2008) (holding that "[t]he Government bears the burden of proving by a preponderance of the relevant and reliable evidence that the facts support a sentencing enhancement"). As Fuentes' sentencing range would have been lower (21 to 27, instead of 27 to 33, months) had the two-level upward adjustment not been applied, he asserts the Government cannot show this error was harmless.

Fuentes preserved this issue in district court by objecting to the upward adjustment on the grounds that his conduct did not meet the definition of

"brandished" under the Guidelines. For this factual issue, we review for clear error, pursuant to the earlier-described standard of review.

Guideline § 2L1.1(b)(5)(B) provides: if a dangerous weapon, including a firearm, "was brandished or otherwise used", the base offense level should be increased by four levels. Prior to the 1 November 2000 amendments to the Guidelines, "brandished" was defined to mean that "the weapon was pointed or waved about, or displayed in a threatening manner". U.S.S.G. § 1B1.1, cmt. n.1(C) (1999). Now, however, less overt conduct satisfies the definition. The applicable Guidelines commentary defines the term as follows:

> "Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.

U.S.S.G. § 1B1.1, cmt. n.1(C) (2006) (emphasis added). "The guidelines' commentary is given controlling weight if it is not plainly erroneous or inconsistent with the guidelines." United States v. Urias-Escobar, 281 F.3d 165, 167 (5th Cir. 2002).

Of course, for purposes of determining the offense level, a defendant is accountable not only for his own acts but also for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity". U.S.S.G. § 1B1.3(a)(1)(B); see also United States v. Nguyen, 190 F.3d 656, 660-61 (5th Cir. 1999) (affirming an enhancement for "otherwise us[ing]" a firearm and stating it did not matter whether defendant personally held the firearm, as a defendant could be held responsible for the conduct of a co-conspirator).

Accordingly, we address whether the district court clearly erred in finding the Government established, by a preponderance of the evidence, that Fuentes

and Villa exhibited an intent to intimidate in their display of the firearm. As stated in the PSR, Arellano and Martinez had already been detained against their will by Fuentes and Villa for four days; further, Arellano informed the Agents that Fuentes had demanded additional money from his family before they would be released. The PSR additionally establishes that Martinez observed Fuentes transfer the pistol to Villa as the group left the stash house to meet the Agents. Arellano also told the Agents that Villa carried this pistol in his waistband during the buyout.

It is reasonable to infer that Villa was responsible for guarding Arellano and Martinez during the buyout, and for releasing the pair only when the smugglers were paid in full. Indeed, one of the Agents confirmed the smuggled aliens were being held in the back seat of the smugglers' vehicle pending transfer of the additional money to Fuentes.

While we are unable to locate a case which directly addresses what constitutes "brandished" under Guideline § 2L1.1(b)(5)(B), we determine, given the totality of the circumstances surrounding the offense, that the district court did not clearly err in finding that Fuentes' conduct with respect to the weapon showed an intent to intimidate. It was not clearly erroneous to infer that Fuentes and Villa made the presence of the weapon known to the smuggled aliens in order to intimidate them. Moreover, Fuentes displayed the pistol in front of the smuggled aliens directly before departing for the buyout, and it was seen in Villa's waistband, where he had ready access to it, prior to the transfer of the money. The smuggled aliens knew they were not free to leave until the transfer had been made.

Thus, the district court's finding that Fuentes' actions constituted brandishing for purposes of Guideline § 2L1.1(b)(5)(B) was not clearly erroneous. Accordingly, it properly applied the two-level upward adjustment.

B.

7

As discussed, at the buyout scene, Martinez informed the Agents that four additional smuggled aliens, three guards, and an assault rifle were at the stash house. In that regard, Fuentes' other contention is that the three-level enhancement, pursuant to Guideline § 2L1.1(b)(2)(A), for smuggling six undocumented aliens is improper because the evidence upon which it is based is both presumptively unreliable and unfit for evidentiary use at sentencing.

In support, Fuentes asserts: Martinez, as a smuggled alien, was a violator of the law and a potential criminal defendant himself; and the court should not admit into evidence a co-defendant's confession to law enforcement. He additionally maintains the district court erred in looking to other evidence to corroborate Martinez' statement. Finally, he contends, presumptive unreliability aside, there was not enough evidence to establish Martinez knew who among those at the stash house was a smuggled alien versus an active participant in the offense.

1.

We must first determine whether Fuentes properly preserved these contentions in district court. There, Fuentes objected to the inclusion of the four additional aliens on the basis that Martinez had no way of knowing who was a smuggled alien. On the other hand, he raises the presumptive-unreliability contention for the first time on appeal.

Fuentes asserts his district court objection properly preserved each contention presented here. He cites Lebron v. National Railroad Passenger Corp., 513 U.S. 374, 379 (1995), as stating that parties are not limited to the precise contentions made in district court.

Fuentes is correct that Lebron supports allowing a party to make any contention in support of a properly presented issue; however, one important factor guiding the Supreme Court's decision in that case was that the claim in Lebron was addressed by the circuit court. Id. "Our practice permit[s] review

8

of an issue not pressed so long as it has been passed upon". Id. (alteration in original) (internal quotation marks omitted).

Fuentes did not contend in district court, as he does now, that Martinez' statement was unfit for use because it was presumptively unreliable, nor did he assert, as he does now, that Martinez was a potential criminal defendant due to his illegal entry into the United States, and thus his statement should not be admitted. Finally, he did not maintain it was erroneous to look to other evidence to corroborate Martinez' claimed presumptively-unreliable statement. Accordingly, the district court's ruling on Fuentes' objection did not address the presumptive-unreliability contention Fuentes raises here.

Therefore, we review this contention only for plain error. See United States v. Garcia-Mendez, 420 F.3d 454, 455-56 (5th Cir. 2005). Under that standard of review, an appellate court may not correct an error unless, inter alia: there is a clear or obvious error that affects substantial rights. E.g., United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005).

On the other hand, Fuentes did assert in district court that the enhancement was inappropriate because there was insufficient evidence Martinez had a basis for knowing there were four additional aliens at the stash house. He raises this contention on appeal as well. Because it was properly preserved in district court, we review it under the earlier-described usual standard of review: the district court's application of the Guidelines is reviewed de novo; its factual findings, only for clear error. Cisneros-Gutierrez, 517 F.3d at 764.

2.

a.

Fuentes' contention regarding the presumptive unreliability of Martinez' statement does not concern application of the Guidelines; instead, it concerns a

9

question of fact: whether the statement is credible.  Our limited review for plain error is narrowed even further, to say the least, when the issue is one of fact. "'[Q]uestions of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error.'"  United States v. Vital, 68 F.3d 114, 119 (5th Cir. 1995) (quoting United States v. McCaskey, 9 F.3d 368, 376 (5th Cir. 1993)).

The reason for that bar is amply demonstrated in this instance.  At sentencing, the district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy".  U.S.S.G. § 6A1.3; see, e.g., United States v. Scott, 48 F.3d 1389, 1395 (5th Cir. 1995).  While uncorroborated hearsay testimony may be relied upon in some instances, hearsay evidence from confidential informants or co-conspirators is generally deemed reliable only when there is sufficient corroboration by other means.  See United States v. Rogers, 1 F.3d 341, 344 (5th Cir. 1993) (confidential informant's reports were found sufficiently reliable when accompanied by corroborating evidence from a governmental investigation); see also United States v. Chavez, 947 F.2d 742, 746-47 (5th Cir. 1991) (finding a co-conspirator's statements sufficiently reliable when consistent with known facts). Additionally, a PSR "'generally bears sufficient indicia of reliability to be considered by the trial court as evidence in making the factual determinations required by the sentencing guidelines'".  United States v. West, 58 F.3d 133, 138 (5th Cir. 1995) (quoting United States v. Bermea, 30 F.3d 1539, 1575 (5th Cir. 1994)).

At the outset, it is questionable whether the concerns associated with confidential informants and co-conspirators apply in this context, as Martinez was neither.  While he entered the United States unlawfully, he was also held hostage by the smugglers, and, for the purposes of this appeal, was their victim. Nonetheless, other information provided by Martinez is corroborated elsewhere

10

in the record. The Agents, as predicted by Martinez, found the assault rifle inside the stash house. Additional evidence provided by Martinez, such as identifying Fuentes as the smuggler who would call family members and request smuggling fees, was corroborated by Fuentes' cell phone records. Moreover, Fuentes failed to present in district court any evidence to support his objection to the court's reliance on the information provided in the PSR regarding Martinez' statement that there were four other aliens in the stash house.

b.

Fuentes additionally asserts that, presumptive unreliability aside, the enhancement is erroneous because the record is devoid of evidence showing Martinez had a basis for knowing the roles of the other individuals at the stash house. As noted, this objection was preserved in district court. Nevertheless, at sentencing, Fuentes failed to refute Martinez' statement, nor did he provide any evidence indicating Martinez could not recognize a smuggler as compared to a captive.

Moreover, as discussed above, Martinez' statement was partially corroborated when the Agents found the rifle at the stash house. Finally, other unchallenged facts provided in the PSR indicate: (1) the smuggling operation was sophisticated enough to have a "stash house"; (2) Fuentes was a guard there; and (3) when the Agents arrived at the house, the unoccupied residence showed signs of a hasty exit – the front door was standing ajar, the TV was playing, and the lights were on. Additionally, Martinez was held hostage in the stash house for four days.

It is reasonable to infer, in the light of this information: others had recently occupied the stash house; and Martinez had a basis for knowing who, of those others, was a guard as opposed to a captive. Accordingly, it was not clearly erroneous for the district court to conclude the enhancement under Guideline § 2L1.1(b)(2)(A) was warranted.

11

## III.

For the foregoing reasons, the judgment is AFFIRMED.